## BRIMMER *v.* REBMAN.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF VIRGINIA.

No. 1154. Submitted January 5, 1891. — Decided January 19, 1891.

A statute of Virginia, entitled "An act to prevent the selling of unwholesome meat," approved February 18, 1890, (Laws of Virginia 1889–1890, 63 c. 80) declares it to be unlawful to offer for sale, within the limits of that State, any beef, veal or mutton, from animals slaughtered one hundred miles or more from the place at which it is offered for sale, unless it has been previously inspected and approved by local inspectors appointed under that act. It provides that the inspector shall receive as his compensation one cent per pound to be paid by the owner of the meats. The act does not require the inspection of fresh meats from animals slaughtered within one hundred miles from the place in Virginia at which such meats are offered for sale. *Held*, that the act is void, as being in restraint of commerce among the states, and as imposing a discriminating tax upon the products and industries of some States in favor of the products and industries of Virginia.

The owner of meats from animals slaughtered one hundred miles or over

from Virginia has the right to compete in the markets of that State upon terms of equality with the owner of meats from animals slaughtered in that State or elsewhere, within one hundred miles from the place at which they are offered for sale.

The principle reaffirmed that, independently of any question of intent, a State enactment is void, if, by its necessary operation, it destroys rights granted or secured by the Constitution of the United States.

THE case is stated in the opinion.

*Mr. R. Taylor Scott* and *Mr. Robert M. Hughes* for appellant.

*Mr. William J. Campbell, Mr. W. C. Goudy* and *Mr. A. H. Veeder* for appellee.

MR. JUSTICE HARLAN delivered the opinion of the court.

William Rebman was tried and convicted before a justice of the peace in Norfolk, Virginia, "a city of fifteen thousand inhabitants or more," of the offence of having wrongfully, unlawfully, and knowingly sold and offered for sale "eighteen pounds of fresh meat, to wit, fresh, uncured beef, the same being the property of Armour & Co., citizens of the State of Illinois, and a part of an animal that had been slaughtered in the county of Cook and State of Illinois, a distance of one hundred miles and over from the said city of Norfolk in the State of Virginia, without having first applied to and had the said fresh meat inspected by the fresh meat inspectors of the said city of Norfolk, he, the said Rebman, then and there well knowing that the said fresh meat was required to be inspected under the laws of Virginia, and that the same had not been so inspected and approved as required by the act of the General Assembly of Virginia, entitled 'An act to prevent the selling of unwholesome meat,' approved February 18, 1890." He was adjudged to pay a fine of $50 for the use of the Commonwealth of Virginia, and $3.75 costs; and, failing to pay these sums, he was, by order of the justice, committed to jail, there to be safely kept until the fine and costs were paid, or until he was otherwise discharged by due course of law.

He sued out a writ of *habeas corpus* from the Circuit Court of the United States for the Eastern District of Virginia upon the ground that he was restrained of his liberty in violation of the Constitution of the United States. Upon the hearing of the petition for the writ he was discharged, upon grounds set forth in an elaborate opinion by Judge Hughes, holding the Circuit Court. *In re Rebman*, 41 Fed. Rep. 867. The case is here upon appeal by the officer having the prisoner in custody.

The sole question to be determined is whether the statute under which Rebman was arrested and tried is repugnant to the Constitution of the United States. The statute is as follows:

"Whereas it is believed that unwholesome meats are being offered for sale in this Commonwealth; therefore,

"1. Be it enacted by the General Assembly of Virginia, That it shall not be lawful to offer for sale, within the limits of this State, any fresh meats (beef, veal, or mutton) which shall have been slaughtered one hundred miles or over from the place at which it is offered for sale, until and except it has been inspected and approved as hereinafter provided.

"2. The county court of each county and the corporation court of each city of this State shall, in their respective counties and cities, appoint one or more inspectors of fresh meats on the petition of not less than twenty citizens; and it shall be the duty of said inspectors to inspect and approve or condemn all fresh meat offered for sale in this State which has been transported one hundred miles or more from the place at which it was slaughtered.

"3. And for all fresh meat so inspected said inspector shall receive as his compensation one cent per pound, to be paid by the owner of the meat.

"4. It shall be the duty of any and all persons, firms or corporations, before offering for sale in this State, fresh meats, which under the provisions of this act are required to be inspected, to apply to the fresh meat inspector of the county or city where the same is proposed to be sold and have said meat inspected; and for a failure so to do, or for offering to sell any fresh meats condemned by said inspector, the person, firm,

or corporation so selling or offering to sell shall be fined not less than fifty nor more than one hundred dollars for each offence, to be recovered before any justice of the peace of the county or city where the violation occurs; provided that, in cities of fifteen thousand inhabitants or more one-half of the fees of inspectors shall be paid into the State treasury; and provided, further, that nothing in this act shall apply to the counties of Accomac and Northampton.

"5. The said inspectors, before discharging the duties herein imposed, shall take and subscribe an oath before the court appointing them to faithfully discharge said duties, and the several courts are respectively empowered to remove, for cause, any inspector and to appoint another or others instead.

"6. This act shall be in force from and after the first day of March, eighteen hundred and ninety." Acts of Virginia 1889–90, p. 63, c. 80.

The recital in the preamble that unwholesome meats were being offered for sale in Virginia cannot conclude the question of the conformity of the act to the Constitution. "There may be no purpose," this court has said, "upon the part of a legislature to violate the provisions of that instrument, and yet a statute enacted by it, under the forms of law, may, by its necessary operation, be destructive of rights granted or secured by the Constitution;" in which case, "the courts must sustain the supreme law of the land by declaring the statute unconstitutional and void." *Minnesota* v. *Barber*, 136 U. S. 313, 319, and authorities there cited. Is the statute now before us liable to the objection that, by its necessary operation, it interferes with the enjoyment of rights granted or secured by the Constitution? This question admits of but one answer. The statute is, in effect, a prohibition upon the sale in Virginia of beef, veal or mutton, although entirely wholesome, if from animals slaughtered one hundred miles or over from the place of sale. We say prohibition, because the owner of such meats cannot sell them in Virginia until they are inspected there; and being required to pay the heavy charge of one cent per pound to the inspector, as his compensation, he cannot compete, upon equal terms, in the markets of that Com-

monwealth, with those in the same business whose meats, of like kind, from animals slaughtered within less than one hundred miles from the place of sale, are not subjected to inspection, at all. Whether there shall be inspection or not, and whether the seller shall compensate the inspector or not, is thus made to depend entirely upon the place where the animals from which the beef, veal, or mutton is taken, were slaughtered. Undoubtedly, a State may establish regulations for the protection of its people against the sale of unwholesome meats, provided such regulations do not conflict with the powers conferred by the Constitution upon Congress, or infringe rights granted or secured by that instrument. But it may not, under the guise of exerting its police powers, or of enacting inspection laws, make discriminations against the products and industries of some of the States in favor of the products and industries of its own or of other States. The owner of the meats here in question, although they were from animals slaughtered in Illinois, had the right, under the Constitution, to compete in the markets of Virginia upon terms of equality with the owners of like meats, from animals slaughtered in Virginia or elsewhere within one hundred miles from the place of sale. Any local regulation which, in terms or by its necessary operation, denies this equality in the markets of a State is, when applied to the people and products or industries of other States, a direct burden upon commerce among the States, and, therefore, void. *Welton* v. *Missouri*, 91 U. S. 275, 281; *Railroad Co.* v. *Husen*, 95 U. S. 465 ; *Minnesota* v. *Barber*, above cited. The fees exacted, under the Virginia statute, for the inspection of beef, veal and mutton, the product of animals slaughtered one hundred miles or more from the place of sale, are, in reality, a tax; and, " a discriminating tax imposed by a State, operating to the disadvantage of the products of other States when introduced into the first-mentioned State, is, in effect, a regulation in restraint of commerce among the States, and, as such, is a usurpation of the powers conferred by the Constitution upon the Congress of the United States." *Walling* v. *Michigan*, 116 U. S. 446, 455. Nor can this statute be brought into harmony with the Con-

stitution by the circumstance that it purports to apply alike to the citizens of all the States, including Virginia; for, "a burden imposed by a State upon interstate commerce is not to be sustained simply because the statute imposing it applies alike to the people of all the States, including the people of the State enacting such statute." *Minnesota* v. *Barber*, above cited; *Robbins* v. *Shelby Taxing District*, 120 U. S. 489, 497. If the object of Virginia had been to obstruct the bringing into that State, for use as human food, of all beef, veal and mutton, however wholesome, from animals slaughtered in distant States, that object will be accomplished if the statute before us be enforced.

It is suggested that this statute can be sustained by presuming — as, it is said, we should do when considering the validity of a legislative enactment — that beef, veal or mutton will or may become unwholesome, " if transported one hundred miles or more from the place at which it was slaughtered," before being offered for sale. If that presumption could be indulged, consistently with facts of such general notoriety as to be within common knowledge, and of which, therefore, the courts may take judicial notice, it ought not to control this case, because the statute, by reason of the onerous nature of the tax imposed in the name of compensation to the inspector, goes far beyond the purposes of legitimate inspection to determine quality and condition, and, by its necessary operation, obstructs the freedom of commerce among the States. It is, for all practical ends, a statute to prevent the citizens of distant States, having for sale fresh meats (beef, veal or mutton), from coming into competition, upon terms of equality, with local dealers in Virginia. As such, its repugnancy to the Constitution is manifest. The case, in principle, is not distinguishable from *Minnesota* v. *Barber*, where an inspection statute of Minnesota, relating to fresh beef, veal, mutton, lamb and pork, offered for sale in that State, was held to be a regulation of interstate commerce and void, because, by its necessary operation, it excluded from the markets of that State, practically, all such meats — in whatever form, and although entirely sound and fit for human food — from animals slaughtered in other States.

Without considering other grounds urged in opposition to the statute and in support of the judgment below, we are of opinion that the statute of Virginia, although avowedly enacted to protect its people against the sale of unwholesome meats, has no real or substantial relation to such an object, but, by its necessary operation, is a regulation of commerce, beyond the power of the State to establish.

*Judgment affirmed.*