GLOVER *et al. v.* BOARD OF FLOUR INSPECTORS.

(*Circuit Court, E. D. Louisiana.* December 13, 1891.)

1. INJUNCTION—DOUBTFUL QUESTION—DEMURRER.
   A bill sought to enjoin an inspection of flour about to be made under Laws La. Ex. Sess. 1870, p. 156, upon the ground that the statute was unconstitutional because the inspection provided for was confined to flour coming to New Orleans "for sale;" thus discriminating in favor of those who bought for their own use, and in favor of resident merchants, as against merchants residing in other states, contrary to the interstate commerce clause of the federal constitution. *Held,* that as the question was a doubtful one, and it seemed probable that the court would be aided by proof of the manner in which the statute operated, a demurrer to the bill would be overruled.

2. CONSTITUTIONAL LAW—INTERSTATE COMMERCE.
   The fact that the statute applied only to the port of New Orleans, and that no penalty was provided for its violation, were matters for the consideration of the legislature alone, and did not go to the question of its validity under the federal constitution.

In Equity. Suit for injunction by Booth F. Glover and others against the board of flour inspectors of New Orleans. On demurrer to the bill. Demurrer overruled.

*W. W. Howe,* for complainants.

*W. H. Rogers,* Atty. Gen., for defendants.

BILLINGS, J. The question in this case is presented by a demurrer to an injunction bill in equity. The plaintiffs are dealers in flour. The defendants are inspectors of flour. The bill is aimed at the statute under which the defendants are appointed. The question is whether, under the constitution of the United States, that statute is an unauthorized interference with, or an unwarranted regulation of, interstate and foreign commerce. That statute is found in No. 71 of the Acts of the Extra Session of 1870, at page 156. The statute is entitled "An act to amend and re-enact an act entitled 'An act to establish a board of flour inspect-

ors for the city and port of New Orleans,' approved March 28, 1867, and numbered 159," (Acts 1867, p. 297.) That statute authorized the governor, with the advice and consent of the senate, to appoint a board of flour inspectors of the city and port of New Orleans.  They are required to inspect all flour imported or coming to the port of New Orleans for sale, solely for the purpose of ascertaining its purity and soundness, and whether of lawful weight, but not for the purpose of classification and grading.  They are to brand each barrel of sound and full-weight flour, and not to brand any other flour; such examination to be on the levee or in the warehouse, as the receiver may elect.  It is declared not to be lawful to sell any flour as sound and merchantable unless the same is branded.  The fee of the inspector is fixed at two cents per barrel.

The incompleteness of this statute, in that it provides for no examination of flour which shall come into any other port of Louisiana than the city or port of New Orleans, and its inefficiency as a means of securing sound, pure, and full-weight flour, in that it imposes no penalty, and simply makes it "unlawful to sell flour as sound and merchantable unless it has on it the official brand," are manifest.  These imperfections could be considered by the legislature of the state alone.  The grave objection to the statute is that it applies only to flour imported or coming to the city of New Orleans "for sale."  The citizen of Louisiana, bringing in either from another state or from abroad flour for his own use or consumption, need have no inspection,—need pay no tax.  The citizen of Missouri, or any other state, who brings in his flour for sale, must have inspection and must pay a tax.  Does this statute create such an inequality, either in its terms or by its necessary operation, as brings it within the line of unconstitutional laws, as defined and expounded in the case of *Brimmer* v. *Rebman*, 138 U. S. 78, 82, 11 Sup. Ct. Rep. 213, and the cases there referred to?  This is a question not easy to determine. It is a question most proper for the supreme court.  It is possible that the proofs which will be offered as to the manner in which the law was enforced may aid this and the appellate court in the consideration of the case.  The circuit judge, when he granted the injunction, seems to have dealt with the question guardedly, and required a bond which will amply protect the defendants until the end of the litigation, in case the injunction should, in the court of last resort, be dissolved, or, if the bond already given is not ample, application may be made for a further bond. The argument for the validity of the statute of 1870 comes from the reservation in the constitution to the states to impose taxes absolutely necessary for the execution of inspection laws, (article 1, § 10, par. 2;) for, while aimed at protecting only the pocket of the community, and not at the protection of its health, and imperfect as to locality, and inefficient, because lacking sanctions or penalties, it is nevertheless, in form and by designation, an inspection law.  On the other hand, there is the argument that the statute, in substance and necessary operation, while laying a burden upon interstate commerce, lays it unequally upon the domestic citizen and the importer who is a citizen of another state.   On the whole, I am of the opinion that I should overrule the demurrer, and let the stat-

ute, and such facts as the proof may establish as to the necessary operation of the statute, come before the court to be dealt with upon the final hearing and in the appellate court.