JEWEL TEA CO. v. LEE'S SUMMIT, MO., et al.

(Circuit Court, W. D. Missouri, W. D.    August 7, 1911.)

No. 3,694.

1. COMMERCE (§§ 41, 68*)—INTERSTATE COMMERCE—INTERFERENCE BY MUNICI-
PAL ORDINANCE—"PEDDLER."

A merchant in Chicago employed an agent, who solicited orders for
merchandise in a city in Missouri and reported the orders.    The mer-
chant put up each article ordered in a package, and all the packages
were shipped to the agent, who took the goods from the depot and deliver-
ed them to the customers and collected the price.    *Held*, that the transac-
tion was interstate commerce, and the agent was not a "peddler," within
an ordinance of the city imposing a license for selling merchandise from
wagons, and the ordinance, as applied to the transaction, was invalid
as an interference with interstate commerce.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 30, 31, 107–
109; Dec. Dig. §§ 41, 68.*

For other definitions, see Words and Phrases, vol. 6, pp. 5260–5267;
vol. 8, p. 7750.]

2. INJUNCTION (§ 85*)—RESTRAINING ENFORCEMENT OF VOID ORDINANCE—
JURISDICTION.

The enforcement of a municipal ordinance, void for interference with
interstate commerce; by criminal proceedings, with frequent arrests and
other arrests threatened, will be enjoined.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 155, 156;
Dec. Dig. § 85.*]

In Equity.    Suit by the Jewel Tea Company against Lee's Summit,
Mo., and others, to enjoin the enforcement of a municipal ordinance.
Injunction granted.

Cowherd, Ingraham, Durham & Morse, for complainant.
Chas. R. Pence and E. S. Bennett, for defendants.

SMITH McPHERSON, District Judge.    The defendants, the city
and its mayor and marshal, are sought to be enjoined from enforcing
an ordinance requiring a license of $1 per day for selling merchandise
from wagons.    There is a state statute with reference to peddlers.
Emert v. Missouri, 156 U. S. 296, 15 Sup. Ct. 367, 39 L. Ed. 430.

[1] The bill of complaint and a deposition of complainant's agent,
show without conflict the following facts:    Complainant is the owner
of a store, and does business in Chicago, Ill.    It has an agent, by name
of Heins, who every two weeks goes from house to house in the de-
fendant city and solicits orders for tea, coffee, and other articles.    The
orders are reported by mail by the agent to the complainant.    In thus
reporting the orders, the agent does not give the names of the pros-
pective purchasers.    But he recites in his reports that a certain number
of purchasers will each take one pound of tea, so many one pound of
coffee, so many one-half pound, and so on.    The articles are each put
up in cartons, or packages, corresponding to the orders, of which the
agent keeps a list.    The separate packages thus wrapped are all put
in one large box, shipped to Kansas City to a sub or other agency,
and the requisite number of such packages reshipped to Lee's Summit,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

consigned to complainant. The agent takes them from the depot, puts them on a dray, which he accompanies to the homes of the customers, delivers the goods, collects the price, and takes new orders for the next bimonthly delivery. In case any of the packages are broken, they are not delivered, but are returned to the Kansas City house. Whether that house returns them to Chicago does not appear. The agent is on a salary, paid him by the house from Chicago. Its agent, Heins, has been arrested five times. Some of the cases are still pending in the trial courts. In others convictions have been obtained, which are now pending on appeal.

Those facts do not make Heins a peddler. The tea company desires patrons. Instead of obtaining names of possible purchasers by any method, and sending samples by mail or other agency to such persons, which clearly would not be peddling, or in violation of the ordinance, the company employs Heins, pays him a salary, and he takes samples for inspection, and solicits and takes orders. Instead of consigning the goods to a drayman, employed by letter, for delivery and collection, which clearly would neither be hawking nor peddling, nor a violation of the ordinance, it sends Heins to take the goods from the railway station, employs a drayman to haul the goods, accompanied by Heins, who carries the goods into the house, collects the price, and takes an order for the next delivery.

The shipment of the goods from Chicago to Kansas City, from Kansas City to Lee's Summit, draying them from the railway depot at Lee's Summit to the street in front of the customer's house, and carrying them by Heins or the drayman into the house, are all parts of one transaction, and that one transaction is interstate commerce. A shipment like that cannot be divided into parts, so as to make one or more parts an intrastate shipment. They must all be taken and regarded as one shipment, and when across a state line the same is an interstate shipment, and is covered by the commerce clause of the national Constitution (article 1, § 8). United States v. Railroad (D. C.) 149 Fed. 486, 490; United States v. Railroad, 157 Fed. 321, 326, 85 C. C. A. 27, 15 L. R. A. (N. S.) 167, and cases cited by the Circuit Court of Appeals for this circuit.

Ordinances, as well as statutes, like this, are in all instances artfully drawn, and their fairness and equality insisted upon. But courts do not observe mere words or phrasing, but look to the substance, effect, and meaning, and, when those are ascertained, enforce the rights of the parties. The ordinance in question is clearly one to compel the people, in the interest of local merchants and middlemen, to buy their necessities from them; and because of such influences, the officers first adopt, and then seek to enforce, such regulations, so as to eliminate outside venders of merchandise, including the necessary articles of food for every family table. The stale argument that the local resident, who votes, and who pays the taxes, and otherwise maintains the town, and bears the local burdens, should be given these privileges as against the outsider and nonresident, is in all such cases strongly urged. The tax of $1 per day is not intended as a measure to raise revenue, but is intended to be, as it will be, if enforced, a

measure to prohibit all kinds of competition by outsiders. There is nothing new in all this. It was done by New York and Rhode Island before we had a government. It was the central thought for the creation of our government; and because of such interference the commerce clause was put in our national Constitution, giving to Congress, and it alone, the power to regulate commerce between the states.

To me the suggestion that a city, as part of the state, can, by a pretended taxation, control the shipment of freight and the sale of such commodities, coming from another state in their original packages, is not to be submitted to for a day. Many states have attempted this, often by statutes, and sometimes by city ordinances, with the result that such action is uniformly held by the Supreme Court of the United States to be void. A citation of a few of those cases will suffice. Crandall v. Nevada, 6 Wall. 35, 18 L. Ed. 745; Welton v. State of Missouri, 91 U. S. 275, 23 L. Ed. 347; Henderson v. Mayor of New York, 92 U. S. 259, 23 L. Ed. 543; Railroad v. Husen (a Missouri case) 95 U. S. 465, 24 L. Ed. 527; Telegraph Co. v. Texas, 105 U. S. 460, 26 L. Ed. 1067; Moran v. New Orleans, 112 U. S. 69, 5 Sup. Ct. 38, 28 L. Ed. 653; Minnesota v. Barber, 136 U. S. 313, 10 Sup. Ct. 862, 34 L. Ed. 455; Brimmer v. Rebman, 138 U. S. 78, 11 Sup. Ct. 213, 34 L. Ed. 862.

No better nor abler discussion of this question will be found than in the Lectures (No. 9) of that great jurist, Samuel F. Miller, Associate Justice of the Supreme Court, page 433, and the notes thereto at page 479 and following, where all the cases by the national Supreme Court down to the year 1891 are collected. And the fact, if it is a fact, that an ordinance or statute is declaratory against all persons, whether residents or nonresidents of the state, and the fact, if it is a fact, that the same is attempted to be enforced against both residents and nonresidents, will not give validity thereto. Minnesota v. Barber, 136 U. S. 313, 10 Sup. Ct. 862, 34 L. Ed. 455.

[2] The enforcement of a void ordinance, by criminal proceedings, with frequent arrests, and other arrests threatened, will be enjoined in an action in equity in United States courts. City of Hutchinson v. Beckham, 118 Fed. (8th Circuit Court of Appeals) 399, 55 C. C. A. 33. In my opinion the ordinance is void, being in effect a burden on commerce between the states.

An injunction will issue against its enforcement as against complainant and its agents.