**NESS PRODUCE CO., an Oregon corporation, Plaintiff,**

v.

**James F. SHORT, Director of Agriculture of the State of Oregon, State Department of Agriculture of the State of Oregon, Mark O. Hatfield, Governor of the State of Oregon, Robert Y. Thornton, Attorney General of the State of Oregon, and their respective successors in office and servants, agents, employees and representatives of their departments, and all others acting on their behalf or in concert with them, Defendants.**

Civ. No. 65–405.

United States District Court
D. Oregon.

July 25, 1966.

Robert Y. Thornton, Atty. Gen., and Harold E. Burke, Asst. Atty. Gen., Salem, Or., for the State.

Theodore B. Jensen and Donald J. DeFrancq, of Davis, Jensen, Martin & Robertson, Portland, Or., for Ness Produce Co.

## OPINION

Before ELY, Circuit Judge, and SOLOMON and TAYLOR, District Judges.

PER CURIAM:

Plaintiff, Ness Produce Co., filed this action to enjoin defendants from enforcing Chapter 150, Oregon Laws 1965, which requires the labeling of imported meat. Defendants are the officials and agency of the State of Oregon charged with enforcing the statute.

Chapter 150 was enacted on April 7, 1965, and became law on August 13,

1965. Upon stipulation of the parties, a preliminary injunction was granted, pending our disposition of this case.

Chapter 150 proscribes the wholesale and retail sale of fresh or frozen meat [1] produced in a foreign country unless the seller (1) displays a sign upon his premises indicating that he sells imported meat and (2) labels each package, cut, and carcass of meat with the country of origin. It requires sellers to keep accurate records of all sales of imported meat and delegates enforcement and rule-making to the State Department of Agriculture. Violation of the act is a misdemeanor.[2]

Administrative regulations require every seller of imported meat to post signs containing the following wording:

(a) FOREIGN MEAT SOLD HERE (or)

(b) IMPORTED MEAT SOLD HERE.

The lettering on such signs must be at least four inches high, of a heavy, positive block style, and of a color easily read. Retailers must post one sign for every 27 running feet of customer meat counter; other sellers must post at least one sign in the main office where it can and will be most conveniently read by customers.

The regulations require that packages of meat be conspicuously labeled:

(a) IMPORTED FROM (name of foreign country) (or)

(b) PRODUCED IN (name of foreign country).

This label must appear on top of the package if other wording is on top. The lettering must be in heavy, block-faced type at least three-eighth inches high, but not less than one-half the size of the largest lettering on the package. Carcasses and wholesale cuts of meat must be labeled or branded in similar fashion.

The regulations also require that sellers keep separate records showing the kind, amount, and source or destination of all imported meat purchased or sold, except that retailers need not record the names and addresses of ultimate consumers.[3]

Plaintiff distributes in the Portland area, boned and frozen lean beef imported primarily from Australia. It imports

---

1. The parties agree that Chapter 150 does not apply to imported meat and meat products which are cured, canned, dried, or cooked.

2. CHAPTER 150
AN ACT
Relating to foreign meat; and providing penalties.
*Be It Enacted by the People of the State of Oregon:*
*Section 1.* The purpose of sections 2 to 4 of this Act is to protect the consumers of this state in their choice of meat for consumption.
*Section 2.* No person shall sell or offer for sale at wholesale or retail, for consumption on the premises or otherwise, any fresh or frozen meat produced in a foreign country unless:
(a) There is displayed conspicuously upon the business premises a sign or signs indicating such meat is imported.
(b) Each package displayed for sale, each cut and each quarter, half and whole carcass of such meat is labeled or branded to indicate the country of origin.

*Section 3.* Persons selling meat described in section 2 of this Act shall keep accurate records of such sales and keep such records for one year and open for inspection by the State Department of Agriculture during regular business hours.
*Section 4.* (1) The State Department of Agriculture shall enforce sections 2 and 3 of this Act and the rules made under this section.
(2) The State Department of Agriculture shall by rule provide:
(a) The size, content and placement of signs, labels and brands required under section 2 of this Act.
(b) The content of records required under Section 3 of this Act.
(3) No person shall violate any provision of a rule adopted under this section.
*Section 5.* Violation of any provision of sections 2 to 4 of this Act is a misdemeanor.

3. The regulations of the State Department of Agriculture are contained in Administrative Order AD 801, promulgated August 16, 1965, and filed in the office of the Secretary of State. ORS 183.020.

this beef in 60-pound packages and resells it to meat processors and retailers in the same packages. This lean beef is not suitable for use as table beef (roasts and steaks) because of its low fat content. It is chiefly used in conjunction with table beef trimmings to make hamburger and sausage products.

Imported meat is inspected twice under federal supervision, once in the country of origin and again on its arrival in this country. 19 U.S.C. § 1306(b); 21 U.S.C. §§ 71–91; 9 C.F.R. §§ 27.1–27.21. Defendants concede that plaintiff's imported meat is healthful, wholesome, and fit for human consumption.

Plaintiff contends that Chapter 150 constitutes an effective embargo against the importation into Oregon of fresh and frozen meat produced in foreign countries, because it imposes discriminatory costs on sellers of imported meat and because it carries the unwarranted connotation that imported meat is inferior to domestic meat. Plaintiff asserts that Chapter 150 is void and unenforceable because (a) it is not a valid exercise of the police power; (b) it conflicts with the laws and treaties of the United States; (c) it violates the Commerce Clause of the United States Constitution; and (d) it violates the equal protection clause of the Fourteenth Amendment.

█ Preliminarily, defendants contend that this case is not properly before a three-judge court, since it presents an issue under the Supremacy Clause. Standing alone, a Supremacy Clause issue will not sustain the jurisdiction of a three-judge court. Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed. 2d 194 (1965). Where there is a substantial challenge to the constitutionality of a state statute, a three-judge court is

necessary, 28 U.S.C. § 2281, and the court has jurisdiction over non-constitutional issues as well. Florida Lime & Avocado Growers, Inc. v. Jacobsen, 362 U.S. 73, 80 S.Ct. 568, 4 L.Ed.2d 568 (1960). In our view, plaintiff has raised significant constitutional issues, and our jurisdiction is proper.

We hold that Chapter 150 unreasonably discriminates against imported meat in violation of the Commerce Clause. We need not decide whether the labeling required by the Act will discourage ultimate consumer purchases of imported meat. The substantial costs of labeling and record-keeping which the Act imposes on sellers of imported meat have an obvious and direct impact on interstate commerce.

█ State-imposed burdens on interstate commerce are valid, if at all, only where the State acts under its inherent police power to protect the life, liberty, health or property of its citizens. Huron Portland Cement Co. v. City of Detroit, 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960). Defendants argue that Chapter 150 is necessary to protect the consuming public from "deception, unfair trade practices, and fraud." However, defendants concede that imported meat is wholesome, and that it is neither organically nor qualitatively different from domestic meat. Nothing in the record indicates that sellers of imported meat are pawning off an inferior product. Even if they were, the labeling requirements of Chapter 150 do not relate to the quality of the product, but only to its place of origin.[4]

Chapter 150 is one of seventeen similar statutes enacted primarily in beef producing states in the last three years. The legislative history of Chapter 150 clearly shows that it was enacted in re-

4. Defendants suggested that labeling under Chapter 150 alerts a consumer to the fact that the meat, if sold in a thawed state, was previously frozen. Chapter 150 makes no reference to freezing, however. If it did, it would be patently discrimina-

tory, since it does not require the labeling of similarly frozen domestic meat. See State of Minnesota v. Barber, 136 U.S. 313, 10 S.Ct. 862, 34 L.Ed. 455 (1890).

sponse to the growing volume of beef imports and was designed primarily to provide economic protection to Oregon cattlemen. The statute reflects the draftsmen's purpose, for it operates primarily, if not exclusively, to burden and make difficult the sale of imported meat. The administrative regulations, while not controlling here, confirm the true purpose of the statute.

■■ We hold that a State exceeds the limits of its police power when it acts to insulate its citizens from outside competition. Baldwin v. G. A. F. Seelig, Inc., 294 U.S. 511, 55 S.Ct. 497, 79 L.Ed. 1032 (1934); Brimmer v. Rebman, 138 U.S. 78, 11 S.Ct. 213, 34 L.Ed. 862 (1891). Chapter 150, Oregon Laws 1965, is void and unenforceable because it conflicts with Article I, Section 8, of the United States Constitution. In arriving at this conclusion, we have been influenced by the opinion in Tupman Thurlow Co. v. Moss, 252 F.Supp. 641 (M.D.Tenn.1966). There, the Court held that Tennessee's substantially similar labeling act ran afoul of the Commerce Clause.[5]

5.

Chapter No. 34

1965 Public Acts of Tennessee

An Act requiring proper identification of imported meats when offered for sale in this state and requiring identification on bids of meat products to state institutions and providing penalties for violations thereof.

Section 1. *Be it enacted by the General Assembly of the State of Tennessee,* That any person, firm, or corporation who sells or offers for sale in the State of Tennessee, through packing houses, meat markets, stores, or otherwise, any meats, meat-foods, either fresh, canned, frozen or cured, which are products of any foreign country to the United States, shall so identify each product and its foreign origin.

Section 2. *Be it further enacted,* That each quarter of each carcass, each carton, each retail package, or individually packaged item shall be plainly identified with a brand or label stating that it is a foreign product and naming the country of its origin. If any product be offered for sale in bulk or portions whereby labeling is not feasible, then a conspicuous sign in lieu of the label shall be displayed near the stock or display of the product. When foreign meats are combined with domestically produced meats into one (1) product, it shall be so labeled. In addition, should preservatives of any kind be used in any packaged meat product, the preservative shall be identified, along with the quantity used, and clearly displayed on any such packaged.

Section 3. *Be it further enacted,* That all bids submitted on meat and meat products to any tax-supported institution within this State shall contain the following language: "This meat is of foreign origin," or "This is domestic meat," or "This is a combination of foreign and domestic meats." And said institution is hereby authorized to reject said bid.

Section 4. *Be it further enacted,* That the State Commissioner of Agriculture is responsible for the administration of this Act. In the performance of his duties thereof the Commissioner is authorized, empowered and directed to make and promulgate regulations to effectuate the provisions of this Act, but none of said regulations shall require a higher standard of purity and sanitation than is from time to time required by the regulations of the United States Department of Agriculture to govern meat inspection by its agricultural research service.

Section 5. *Be it further enacted,* That this Act and any portion hereof shall not be construed as to be in conflict with Chapter 9 of Title 52 of the Tennessee Code Annotated, but rather as supplementary thereto.

Section 6. *Be it further enacted,* That any person, firm or corporation who shall fail to comply with the provisions of this Act and any portion thereof, shall be guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than Twenty-five Dollars ($25.00) nor more than One Hundred Dollars ($100.00), or be imprisoned in the county jail not more than thirty (30) days for the first offense. For each second or successive conviction of such offense against the provisions of this Act, the fine shall be not less than One Hundred Dollars ($100.00) nor more than Five Hundred Dollars ($500.00) nor more than ninety (90) days imprisonment in the county jail, or both such fine and imprisonment.

Section 7. *Be it further enacted,* That the provisions of this Act are hereby de-

Because we base our decision upon the Commerce Clause, we do not consider the other grounds upon which plaintiff attacks Chapter 150.

This opinion will serve as findings of fact and conclusions of law under Rule 52(a), Fed.R.Civ.P.

FRED M. TAYLOR, District Judge (dissenting):

The majority of this three-judge court have concluded that Chapter 150, Oregon Laws 1965 is in violation of the Commerce Clause of the United States Constitution.

Under the facts of this case and the authorities relied on, as I understand them, I am unable to agree with the majority.

The Act in question was enacted under and pursuant to the police power of the State of Oregon with the intent and for the purpose of protecting the consuming-purchasing public against deception. The evidence reveals that the principal objection to the enforcement of the law is the apprehension on the part of the retailers of meat that the public would become aware of the fact that they are selling foreign or imported meat together with domestic meat which might result in loss of business. It is clear that by not divulging the true facts, the retailers are now pawning off to the consumer foreign meat, imported in a frozen state, as domestic meat. It is my opinion that under its police power the State of Oregon not only has the right but the duty to protect its citizens from such deception.

I do not believe the evidence is sufficient to justify the holding that the en-

forcement of this Act would unreasonably burden interstate or foreign commerce so as to violate the Commerce Clause of the Constitution of the United States.

---

clared to be severable, and if any of its sections, provisions, clauses, or parts be held unconstitutional or void, then the remainder of this Act shall continue in full force and effect, it being the legislative intent now hereby declared, that this Act would have been adopted even if such unconstitutional or void matter had not been included therein.

Section 8. *Be it further enacted,* That this Act shall take effect from and after

July 1, 1965, the public welfare requiring it.
Passed: February 16, 1965.
    Jared Maddux
      Speaker of the Senate,
    William L. Barry,
      Speaker of the House
        of Representatives.
Approved: February 24, 1965.
    Frank G. Clement,
      Governor.