REQUESTED BY: Dear Senator Schmit:
In your letter of February 14, 1979, you requested our opinion on the constitutionality of LB 399. We have examined the provisions of this legislation and have concluded that LB 399 violates the Commerce Clause, Article I, section 8 of the Constitution of the United States.
LB 399 basically requires the labeling and identification of any meat imported from outside the United States. Section 2 of LB 399 provides that:
 ". . . any person, persons, association, firm, or corporation, who knowingly sells or offers for sale any meat imported from without the boundaries of the United States, or any meat product containing imported meat, without labeling such meat or meat product, stating that it is imported or contains imported meat, naming the country of its origin, in letters not less than one quarter of an inch in height, and date of exportation regardless of the place of packaging . . . shall be guilty of a Class III misdemeanor."
It additionally provides that restaurants of other business establishments serving foods for consumption on the premises must give notice to customers if any meat products contain imported meat.
LB 399 authorizes the Bureau of Dairies, Food and Drugs and the weights and measures division of the Department of Agriculture to aid in the enforcement of the act. The Director of Agriculture is authorized to adopt such regulations as are necessary to enforce the provisions of the act. Violations of LB 399 are punishable as Class III misdemeanors.
LB 399 requires that any meat imported from outside the United States be labeled and identified as such. The primary constitutional question raised is whether this requirement violates the Commerce Clause, Article I, section 8 of the Constitution of the United States. This issue has been previously addressed by the United States District Court for the District of Nebraska, in a case involving legislation nearly identical to that of LB 399. Armour Co. v. Stateof Nebraska, 270 F. Supp. 941 (D.C.Neb. 1967). Also see,Thurlow Co. v. Moss, 252 F. Supp. 641 (D.C.M.D.Tenn. 1966);Ness Produce Co. v. Short, 263 F. Supp. 586 (D.C.Ore. 1966); International Packers, 271 F. Supp. 430 (D.C.S.D.Ia. 1967).
In Armour, the three-judge district court held that a Nebraska statute requiring labels, upon any products in which any imported meats were used, to state that imported meat was contained therein, the name of the country of its origin, and the date when it was exported, violated the Commerce Clause of the Constitution of the United States and was unenforceable. The district court stated:
 "As appears from the portion of LB 169 which has been previously quoted herein, the Nebraska statute subjects the sale of imported meat to an even greater burden in labeling than that imposed by the statutes of the three States which have just been discussed. It requires the label upon a product in which any such meat is used not only to state that imported meat is contained therein and to name the country of its origin, but also to set out the date when the meat involved was exported.
 "A labeling requirement that imported meat be identified `as a foreign product and naming the country of its origin' which the court held as to the Tennessee statute was `exceedingly burdensome' and constituted as to the commingling thereof into food products a `practical impossibility' would have its onerousness materially increased by the further need under the Nebraska statute or keeping track of and carrying forward the exportation date of the meat, from the commencement of its foreign-commerce course, through its continuance into the commingling channel, and until the reaching of its marketing and distributional goal.
 "But even beyond this, such exportation-date labeling could hardly in fact represent anything but an artificial and discriminatory requirement in the situation. With admittedly no question being involved as to the condition of the meat, all that the exportation date could be contended to relevantly convey would be some indication of the extent of the meat's refrigeration and storage. If, however, extent of refrigeration and storage could represent a legitimate state interest in relation to commerce as a matter of consumer information, then the State could hardly any less have concern that the consumer also be provided with information making some corresponding indication as to domestic meat from other states or meat slaughtered within the state, which similarly was the subject of product use and as to which there similarly could be varying refrigeration and storage involved.
 "What the court said in the Oregon case was the manifest purpose of that statute to strike at the importation of meat by burdening and making difficult its sale is equally true and apparent as to the Nebraska statute on its provisions as discussed above and from its legislative history.
". . . .
 "While the desire of the Nebraska Legislature to serve the interest of the cattle industry of the State is both proper and commendable, it could not, of course, in its attempt to strike at imported meat resort to means which were designed or had the effect to unreasonably burden or prevent commerce in such meat, when weighed in relation to legitimate state police-power interest. A State cannot, as said in the Ness Produce case, supra, 263 F. Supp. at 589 and the cases there cited, act wholly `to insulate its citizens from outside competition'. Whatever insulative result it may achieve can only be incidental to some reasonable exercise of its police power in legitimate welfare protection.
 "Here, while the discussion on the legislative floor could leave no possible doubt as to what the real object of LB 169 was, some interjections of purported justification were made as to a housewife having the right to know the nature of the product she was buying. Assuming that there can be a legitimate state interest in having a purchaser informed by some reasonable indication of the fact that they products here involved contained in part imported meat, the difficulty with LB 169 is that it does far beyond such means and burdens as would be necessary to provide this information for consumer choice." Id.
at 944-45.
Based on the rationale of the Armour decision, it is our opinion that LB 399 would violate the Commerce Clause of the Constitution of the United States.