OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

July 26, 2002

Eduardo J. Sanchez, M.D., M.P.H.    Opinion No. JC-0531
Commissioner of Health
Texas Department of Health     Re: Whether chapter 150, subchapter A or B of the
1100 West 49th Street       Texas Agriculture Code violates the Commerce
Austin, Texas 78756-3199     Clause of the United States Constitution, and related
               questions (RQ-0478-JC)

Dear Commissioner Sanchez:

State statutes from other states that require labeling imported meat as "imported" have been held to violate the Commerce Clause, article I, section 8, clause 3 of the United States Constitution. *See* U. S. CONST. art. I, § 8, cl. 3; *Armour & Co. v. Nebraska*, 270 F. Supp. 941, 946 (D. Neb. 1967) (per curiam) (mem.); *Int'l Packers Ltd. v. Hughes*, 271 F. Supp. 430, 433 (S.D. Iowa 1967) (mem.); *Ness Produce Co. v. Short*, 263 F. Supp. 586, 589 (D. Or.) (per curiam), *aff'd*, 385 U.S. 537 (1966) (per curiam). Section 150.002 of the Texas Agriculture Code directs a wholesaler or retailer of imported fresh meat to label or brand the meat as "'Product of _____' (nation of origin of the imported fresh meat) or other words clearly indicating the nation of origin." TEX. AGRIC. CODE ANN. § 150.002(e) (Vernon Supp. 2002). Noting that the Texas Department of Health (the Department) has not adopted rules implementing section 150.002, you ask whether the statutory requirement violates the Commerce Clause.[1] We believe a court would conclude, consistently with judicial precedent, that it does.

We note, however, that recent amendments to the federal Agricultural Marketing Act of 1946, 7 U.S.C. ch. 38, which will take effect on September 30, 2004, require retailers of certain meat products to "inform consumers . . . of the [product's] country of origin." Farm Security and Rural Investment Act of 2002, Pub. L. No. 107-171, § 10816, 116 Stat. 134, 534 (2002) (to be codified at 7 U.S.C. §§ 1638-1638d). These recent amendments also require the United States Secretary of Agriculture to issue guidelines for "voluntary country of origin labeling" by September 30, 2002. *Id.* sec. 284(a), 116 Stat. 134, 535 (2002) (to be codified at 7 U.S.C. § 1638c). Being a federal law, as opposed to a state law, this provision would not be subject to a Commerce Clause objection and would ultimately appear to accomplish the same result sought by the state statute in question.

---

[1]Letter from Eduardo J. Sanchez, M.D., M.P.H., Commissioner of Health, Texas Department of Health, to Honorable John Cornyn, Texas Attorney General, at 1 (Dec. 5, 2001) (on file with Opinion Committee) [hereinafter Request Letter].

You also ask whether the federal Meat Inspection Act, 21 U.S.C. chapter 12, and the federal Poultry Products Inspection Act, 21 U.S.C. chapter 10, preempt the Texas statute. *See* Request Letter, *supra* note 1, at 2. Because we conclude that a court would find the statute unconstitutional on the basis of the Commerce Clause, we do not resolve the preemption issue. *See* U.S. CONST. art. VI, cl. 2 (Supremacy Clause); 21 U.S.C. § 467e (2000) (stating that state may not impose labeling requirements in addition to or different than federal requirements); 21 U.S.C. § 678 (2000) (same).

You ask finally whether chapter 150, subchapter B of the Agriculture Code violates the Commerce Clause. *See* Request Letter, *supra* note 1, at 1. We presume you are particularly concerned about section 150.012, which forbids a state agency or political subdivision to "purchase beef or a product consisting substantially of beef that has been imported from outside the United States." TEX. AGRIC. CODE ANN. § 150.012(a) (Vernon Supp. 2002). When a state participates in the market as a consumer, it is not subject to Commerce Clause restraints. *See White v. Mass. Council of Constr. Employers, Inc.*, 460 U.S. 204, 207-08 (1983). We accordingly believe that a court would conclude that section 150.012 does not violate the Commerce Clause.

Chapter 150 of the Agriculture Code, entitled "Imported Meat," comprises two subchapters, *see* TEX. AGRIC. CODE ANN. §§ 150.001-.012 (Vernon Supp. 2002), and you question the constitutionality of each of them. Subchapter A, consisting of sections 150.001 through 150.003, applies to the sale of imported fresh meat and forbids a person knowingly to sell at wholesale or at a retail store imported fresh meat that does not comply with section 150.002. *See id.* § 150.002(a); *see also id.* § 150.001 (defining terms). Section 150.002 requires imported fresh meat to be labeled or branded with the country of origin:

> (a) A person may not knowingly sell at wholesale or at a retail store any imported fresh meat unless the person complies with the requirements prescribed by this section.
>
> (b) The requirements of Subsections (c) and (d) of this section apply only to imported fresh meat offered for sale at wholesale or at a retail store.
>
> (c) A label or brand shall be placed on each quarter, half, or whole carcass of imported fresh meat and on each individually wrapped or packaged cut or other part of imported fresh meat.
>
> (d) A label or sign shall be placed on each tray or case in which unwrapped or unpackaged cuts or slices of imported fresh meat are displayed for selection by a patron and on each tray or other container in which imported fresh meat, including hamburger, ground meat, or sausage, is displayed in bulk.

> (e) The label, brand, or sign must contain the words "Product of
> _____" (nation of origin of the imported fresh meat) or other
> words clearly indicating the nation of origin. The label or sign for
> imported fresh meat described by Subsection (d) must be conspicuous
> and legible.

*Id.* § 150.002. A person who "knowingly violates" section 150.002 commits a criminal offense. *Id.* § 150.003(a), (b). Subchapter B, consisting of sections 150.011 through 150.012, applies to the purchase of imported beef by state agencies and political subdivisions. *See id.* § 150.012; *see also id.* § 150.011 (defining terms). Under section 150.012, a state agency or political subdivision may not purchase imported beef: "A state agency or political subdivision may not purchase beef or a product consisting substantially of beef that has been imported from outside the United States." *Id.* § 150.012(a).

The Department is charged with enforcing sections 150.002 and 150.012. *See id.* §§ 150.003(c), .012(b), (c). You indicate that the Department has not adopted rules for subchapter A, but the Texas Board of Health has adopted rules for subchapter B, which are found in title 25 of the Texas Administrative Code, chapter 229, subchapter C. *See* Request Letter, *supra* note 1, at 1; *see also* 25 TEX. ADMIN. CODE ch. 229, subch. C (2002) (Dep't of Health, Food and Drug). Under title 25, section 229.32 of the Texas Administrative Code, a state agency's or political subdivision's purchasing official must require the vendor and all previous buyers or sellers of a beef product to certify that the product is not imported. *See id.* § 229.32(a), (b).

The Commerce Clause, article I, section 8, clause 3 of the United States Constitution, empowers Congress to "regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. CONST. art. I, § 8, cl. 3. You observe that "[w]hile the clause is phrased as an affirmative grant of power, it has a 'negative' or 'dormant' aspect that restricts" a state's power to enact a law that interferes with interstate or foreign commerce. Request Letter, *supra* note 1, at 2; *accord* Tex. Att'y Gen. Op. Nos. JC-0093 (1999) at 5 (noting that Commerce Clause has been interpreted to contain "a further, negative command known as the dormant Commerce Clause"); JM-1258 (1990) at 5 (stating that Commerce Clause has been interpreted not only to confer power on federal government to regulate commerce, but also to limit states' powers to interfere with commerce). "The negative or dormant implication of the Commerce Clause prohibits state . . . regulation . . . that discriminates against or unduly burdens interstate commerce and thereby 'imped[es] free private trade in the national marketplace.'" *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 287 (1997) (quoting *Reeves, Inc. v. Stake*, 447 U.S. 429, 437 (1980)). A state may adopt a regulation that protects its residents' health and safety, but if the regulation "discriminates against out-of-state interests by drawing geographical distinctions between entities that are otherwise similarly situated, such facial discrimination will be subject to a high level of judicial scrutiny." *Tracy*, 519 U.S. at 306, 307 n.15. The courts also recognize that the Commerce Clause does not prohibit a state "from participating in the market and exercising the right to favor its own citizens over others." *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 810 (1976); Dan T. Coenen,

*Untangling the Market-Participant Exemption to the Dormant Commerce Clause*, 88 MICH. L. REV. 395, 401 (1989).

The United States Supreme Court has provided a method for analyzing a state regulation under the negative Commerce Clause:

> [T]he first step in analyzing any law subject to judicial scrutiny under the negative Commerce Clause is to determine whether it "regulates evenhandedly with only 'incidental' effects on interstate commerce, or discriminates against interstate commerce." *Hughes* [*v. Oklahoma*], 441 U.S. [322], 336 [(1979)]. As we use the term here, "discrimination" simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter. If a restriction on commerce is discriminatory, it is virtually *per se* invalid. By contrast, nondiscriminatory regulations that have only incidental effects on interstate commerce are valid unless "the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

*Or. Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 99 (1994) (citations generally omitted).

State labeling statutes substantially similar to section 150.002 of the Agriculture Code have repeatedly been held to contravene the Commerce Clause. In *Armour and Co. v. Nebraska*, a federal district court held unconstitutional a Nebraska statute, which the opinion refers to as "LB 169," that required a meat product containing any imported meat to be labeled with the name of "'the country of its origin, in letters not less than one quarter of an inch in height, and date of exportation, regardless of the place of packaging . . . and date of packaging if sterile-packaged outside the boundaries of the United States.'" *Armour & Co. v. Neb.*, 270 F. Supp. 941, 942 (D. Neb. 1967) (per curiam) (mem.) (quoting Nebraska statute). According to the court, LB 169 was similar to other laws, also adopted in the mid-1960s, that had been held unconstitutional:

> LB 169 is one of a series of state labeling statutes enacted during the last few years in relation to the sale of imported meat. Constitutional challenge has heretofore been made against three of these statutes, and each of them has been declared by a federal three-judge district court to be violative of the Commerce Clause, Art. I, Sec. 8 of the Constitution of the United States. *Tupman Thurlow Co. v. Moss*, 252 F. Supp. 641 [(M.D. Tenn. 1966)]; *Ness Produce Co. v. Short*, 263 F. Supp. 586 [(D. Or. 1966)]; *Int'l Packers Ltd. v. Hughes*, 271 F. Supp. 430 [(S.D. Iowa 1967)]. The decision involving the Oregon statute was appealed to and was affirmed by the Supreme Court, per curiam, in *Short v. Ness Produce Co.*, 385 U.S. 537 (1967).

*Id.* at 943 (footnotes and citations generally omitted). In the view of the federal district court, a "labeling requirement that imported meat be identified 'as a foreign product and naming the country of its origin'. . . was 'exceedingly burdensome'" and onerous. *Id.* at 944 (quoting *Tupman Thurlow Co.*, 252 F. Supp. at 645). And, after examining the legislative history, the Nebraska court found that the law was intended not to protect Nebraskans' health and safety, but to protect domestic producers and feeders of meat products. *See id.* at 945. The court quoted a legislator's characterization of the bill as "an attempt 'to . . . protect the biggest industry of this state'":

> The purpose of this bill is obvious. It's discouraging use of imported beef from foreign countries and why? Because we want to protect the basic industry of this state. . . . [O]f course we want to create in the minds of the housewife who buys meat when she sees it's imported meat that she doesn't want to buy it.

*Id.* (quoting legislative history). While the court commended the Nebraska Legislature's desire to serve the interests of the state's cattle industry, the court concluded that the unreasonable burden on interstate commerce outweighed any legitimate state police-power interest. *See id.*

As the Nebraska court stated, at least three other courts found that similar statutes requiring special labels for imported meat violated the Commerce Clause of the United States Constitution. In *Ness Produce Co. v. Short*, the United States District Court for the District of Oregon considered a state law, enacted in 1965, that required a seller of meat produced in a foreign country to label "each package, cut, and carcass of meat with the country of origin." *Ness Produce Co. v. Short*, 263 F. Supp. 586, 587 (D. Or.) (per curiam), *aff'd*, 385 U.S. 537 (1966) (per curiam). While the court admitted that "[s]tate-imposed burdens on interstate commerce" may be valid "where the [s]tate acts under its inherent police power to protect the life, liberty, health[,] or property of its citizens," the court found an insufficient police-power interest. *See id.* at 588. Moreover, the court found that the statutory labeling requirements did not relate to the product's quality, "but only to its place of origin." *Id.* The United States District Court for the Middle District of Tennessee similarly concluded that a Tennessee labeling act requiring a seller of imported meat or "meat foods" to label the product and identify "its foreign origin" was unconstitutional. *Tupman Thurlow Co.*, 252 F. Supp. at 642. The Tennessee court found "no escape" from concluding that the labeling requirement imposed "unreasonable and discriminatory restrictions and burdens upon interstate and foreign commerce, and so run[s] afoul of the Commerce Clause." *Id.* at 645; *see also Int'l Packers Ltd. v. Hughes*, 271 F. Supp. 430, 433 (S.D. Ia. 1967) (mem.) (finding "no legitimate state interest justifying the burden imposed upon interstate commerce by the Iowa Meat Labeling Act" and concluding that act violates Commerce Clause). *But see Pac. Meat Co. v. Otagaki*, 394 P.2d 618, 623-24 (Haw. 1964) (concluding that state may, in exercise of its police power, require labels disclosing geographic origin of poultry sold to ultimate consumers).

We conclude that a court would find that section 150.002 of the Agriculture Code, in particular, violates the Commerce Clause of the Federal Constitution and is unenforceable. Because

section 150.002 differentiates among meat and meat products solely on the basis of where they were produced, we believe a court would conclude that it is discriminatory and per se invalid. *See Or. Waste Sys., Inc.*, 511 U.S. at 99.

Moreover, we do not believe a court would find that the state had a police-power interest in adopting the law sufficient to except it from typical Commerce Clause requirements. *See Gen. Motors Corp.*, 519 U.S. at 306, 307 n.15. Although legislative history of chapter 150, subchapter A of the Agriculture Code is unavailable due to the statute's age, the session law itself and contemporaneous news reports indicate that the intent of the Texas labeling requirement was not primarily aimed at protecting the public health and safety.[2] The substance of the statute was first adopted in 1965, *see* Act of Mar. 8, 1965, 59th Leg., R.S., ch. 32, §§ 1-4, 1965 Tex. Gen. Laws 88, 88, which, we note, places it within that period of time during which the Nebraska case, *Armour and Co. v. Nebraska,* indicated that several states adopted similar statutes related "to the sale of imported meat." *See Armour & Co.*, 270 F. Supp. at 943. The emergency clause of the original act does not specifically mention the public health and safety as a reason that the bill cannot be read in each House on three consecutive days: "The fact that the people of this state are not aware of the extent to which imported meat is being sold in this state, and the fact that there is presently no way for a person to know whether or not he is buying imported meat, . . . create[s] an emergency." Act of Mar. 8, 1965, 59th Leg., R.S., ch. 32, § 6, 1965 Tex. Gen. Laws 88, 88-89. Additionally, a contemporaneous newspaper article reports that the House sponsor of the 1965 Texas act justified the labeling requirement as follows: "'We are not keeping beef out of here, we are just labeling it so housewives will know what it is.'" *Origin Labeling Left in House Meat Import Bill,* HOUSTON POST, Mar. 4, 1965 (quoting Rep. Steve Burgess); *see also Bill Requires Imported Beef Be So Labeled,* AUSTIN STATESMAN, Mar. 8, 1965 ("Texas legislators said today housewives must be warned if they are buying steaks from Australia or off a fat steer from the ranch next door."); *cf. Senate Passes Bill on Imported Fresh Meats,* HOUSTON POST, Jan. 29, 1965 (reporting that Senator Dorsey Hardeman, who sponsored bill, "claims the bill is designed to protect the buyer"). These comments, reminiscent of the legislative discussions summarized in the Nebraska case we have discussed, lead us to believe that a court would find that any health and safety interest that is served by the Texas statutory labeling requirement is outweighed by the unconstitutional discrimination against foreign products.

Given our conclusion that a court would find section 150.002 of the Agriculture Code unconstitutional, we believe the remainder of chapter 150, subchapter A, consisting of sections 150.001 and 150.003, is without effect. Section 150.001 defines terms for the purposes of the subchapter. *See* TEX. AGRIC. CODE ANN. § 150.001 (Vernon Supp. 2002). Section 150.003 provides a criminal penalty for violations of section 150.002. *See id.* § 150.003. While the original 1965 act provides that the sections are severable, it limits the severability only to those provisions that can

---

[2]*See also* Letter from Honorable Susan Combs, Texas Commissioner of Agriculture, to Honorable John Cornyn, Texas Attorney General, at 2 (Jan. 17, 2002) (asserting that state law's purpose "is to ensure that Texas consumers . . . are permitted to make free market choices between different producers of fresh meat") [hereinafter Commissioner of Agriculture's Brief].

be effectuated without the invalid provision. *See* Act of Mar. 8, 1965, 59th Leg., R.S., ch. 32, § 5, 1965 Tex. Gen. Laws 88, 88. In our opinion, the remaining sections of subchapter A cannot be effectuated without the labeling requirement, which is found in section 150.002.

Because we conclude that the labeling requirement would likely be found unconstitutional under the Commerce Clause, we do not resolve the preemption issue you raise. We note, however, that both the federal Meat Inspection Act, 21 U.S.C. chapter 12, subchapter I, and the federal Poultry Products Inspection Act, 21 U.S.C. chapter 10, expressly preempt state laws imposing label requirements in addition to the federal requirements. Section 678, 21 U.S.C., prohibits a state from imposing any labeling requirements in addition to, or different than, those made under 21 U.S.C. chapter 12, subchapter I. *See* 21 U.S.C. § 678 (2000); *see also id.* § 601(*o*), (p) (defining "label" and "labeling"). Section 467e, 21 U.S.C., likewise forbids a state to impose labeling requirements "in addition to, or different than those made under" chapter 10. *See* 21 U.S.C. § 467e; *see also id.* § 453(s) (defining "label"). Both statutes require the products to which they apply, after inspection and approval, to bear two pieces of information: (A) the name and place of business of the manufacturer, packer, or distributor; and (B) "an accurate statement of the quantity of the" product or contents "in terms of weight, measure, or numerical count." *Id.* §§ 453(h)(5), 457(a), 601(n)(5), 607(b). Under the Supremacy Clause, article VI of the United States Constitution, the laws of the United States "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2. State law that conflicts with federal law is preempted and "'without effect.'" *Cipollone v. Liggett Group*, 505 U.S. 504, 516 (1992) (citing *M'Culloch v. Maryland*, 17 U.S. 316 (1819)) (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)).

A brief we have received from the Commissioner of Agriculture avers that the state labeling law "affirmatively serve[s] the purposes of" the North American Free Trade Agreement and federal laws other than those you have explicitly asked about. Commissioner of Agriculture's Brief, *supra* note 2, at 2. We did not receive additional citations or briefing on these issues, and we are unaware of other federal statutes that may require a different result. For this reason, we limit our answer to the constitutional and statutory provisions about which you have asked and generally do not consider the North American Free Trade Agreement and other federal laws to which the Commissioner of Agriculture may refer.

Nevertheless, we note that Congress recently has adopted amendments to the Agricultural Marketing Act of 1946, 7 U.S.C. ch. 38, that will require "a retailer of a covered commodity" to "inform consumers, at the final point of sale . . . , of the country of origin of the covered commodity." Pub. L. No. 107-171, § 10816, sec. 282(a)(1), 116 Stat. 134, 534 (2002) (to be codified at 7 U.S.C. § 1638a). The term "covered commodity" generally means:

(i)  muscle cuts of beef, lamb, and pork;

(ii)  ground beef, ground lamb, and ground pork;

(iii) farm-raised fish;

(iv) wild fish;

(v) a perishable agricultural commodity; and

(vi) peanuts.

*Id.* sec. 281(2)(A), 116 Stat. 134, 533 (2002); *see also id.* sec. 281(2)(B), 116 Stat. 134, 533 (2002) (listing exclusions). This requirement applies to retail sales occurring September 30, 2004, or later. *See id.* sec. 285, 116 Stat. 134, 535 (2002). Additionally, the United States Secretary of Agriculture must issue guidelines for "voluntary country of origin labeling" by September 30, 2002. *See id.* sec. 284(a), 116 Stat. 134, 535 (2002) (to be codified at 7 U.S.C. 1638c).

We conclude, in answer to your second question, that a court would find that section 150.012 of the Agriculture Code, which prohibits a state agency or political subdivision from purchasing "beef or a product consisting substantially of beef that has been imported from outside the United States," TEX. AGRIC. CODE ANN. § 150.012(a) (Vernon Supp. 2002), is consistent with the Commerce Clause. The judiciary has long interpreted the dormant Commerce Clause not to apply to a state in its role as a "market participant," as opposed to a "market regulator." *See, e.g., Coll. Savs. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 685 (1999); *Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 592 (1997); *White v. Mass. Council of Constr. Employers, Inc.*, 460 U.S. 204, 207-08 (1983); Dan T. Coenen, *Untangling the Market-Participant Exemption to the Dormant Commerce Clause*, 88 MICH. L. REV. 395, 397 (1989). Thus, where a state participates in the private market, it may prefer goods or services of its own citizens, "even though it could not do so while" regulating the market. *Coll. Sav. Bank*, 527 U.S. at 685. Insofar as the state agencies and political subdivisions are purchasing beef or beef products with state or local public funds, they are acting as market participants and entitled to be treated as such. *Cf. White*, 460 U.S. at 214.

## S U M M A R Y

A court probably would conclude that chapter 150, subchapter A of the Agriculture Code, which requires imported meat to be labeled with the country of origin, violates the Commerce Clause, article I, section 8, clause 3, of the United States Constitution. *See* U.S. CONST. art. I, § 8, cl. 3; TEX. AGRIC. CODE ANN. ch. 150, subch. A (Vernon Supp. 2002). The Texas Department of Health, which is charged with enforcing the labeling requirement, has not adopted any rules implementing chapter 150, subchapter A. Beginning on September 30, 2004, however, federal law will require retailers of certain meat products to "inform consumers . . . of the [product's] country of origin." Farm Security and Rural Investment Act of 2002, Pub. L. No. 107-171, § 10816, 116 Stat. 134, 534 (2002) (to be codified at 7 U.S.C. §§ 1638-1638d). And, by September 30, 2002, the United States Secretary of Agriculture will issue guidelines for "voluntary country of origin labeling." *See id.* sec. 284(a), 116 Stat. 134, 535 (2002) (to be codified at 7 U.S.C. 1638c). Being a federal law, as opposed to a state law, this provision would not be subject to a Commerce Clause objection and would ultimately appear to accomplish the same result sought by the state statute in question.

On the other hand, a court probably would conclude that chapter 150, subchapter B of the Agriculture Code does not violate the Commerce Clause of the United States Constitution. *See* U.S. CONST. art. I, § 8, cl. 3; TEX. AGRIC. CODE ANN. ch. 150, subch. B (Vernon Supp. 2002). Section 150.012 of the Agriculture Code, part of chapter 150, subchapter B, forbids a state agency or political subdivision to purchase imported beef or products using imported beef, TEX. AGRIC. CODE ANN. § 150.012(a) (Vernon Supp. 2002), and is an example of the state participating in the market as a consumer. *See White v. Mass. Council of Constr. Employers, Inc.*, 460 U.S. 204, 207-08 (1983).

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee