**TAPE INDUSTRIES ASSOCIATION OF AMERICA, a California corporation, Barry Pressman, Donald Koven, Jean Holmquist, Robert Holmquist, and Stanley Meckler, Plaintiffs,**

**v.**

**Evelle J. YOUNGER, District Attorney, County of Los Angeles, and Roger Arnebergh, City Attorney, City of Los Angeles, Defendants.**

**Civ. No. 68–1938.**

United States District Court,
C. D. California.

July 27, 1970.

Charles E. Beardsley, Arthur Leeds, and Beardsley, Hufstedler & Kemble, Los Angeles, Cal., for plaintiffs.

John D. Maharg, County Counsel, Robert C. Lynch, Asst. County Counsel, Howard S. Smith, and Mitchell, Silberberg & Knupp, Los Angeles, Cal., for defendant Younger.

Roger. Arnebergh, pro se, and Philip E. Grey, Asst. City Atty., for defendant Arnebergh.

Henry Kaiser, Eugene Gressman, Ronald Rosenberg, and Van Arkel & Kaiser, Washington, D. C., for American Federation of Musicians, amicus curiae.

Mortimer Becker and Becker & London, New York City, for American Federation of Television and Radio Artists, as amicus curiae.

## DECISION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

Before TRASK, Circuit Judge,* and WHELAN and HAUK, District Judges.

HAUK, District Judge.

This is an action for declaratory and injunctive relief. Plaintiffs contend that the so-called "tape piracy" law of California, Penal Code, Section 653h (1968) [1] is in conflict with the Copy-

---

* Also designated and appointed by the Chief Judge of the Ninth Circuit pursuant to 28 U.S.C. § 2284 to hold district court for the Central District of California and to hear and determine this cause.

1. California Penal Code, Section 653h (1968)

"§ *653h. Transfer of recorded sounds for unlawful use; sale*

(a) Every person is guilty of a misdemeanor who:

(1) Knowingly and willfully transfers or causes to be transferred any sounds recorded on a phonograph record, disc, wire, tape, film or other article on which sounds are recorded, with intent to sell or cause to be sold, or to use or

right Clause of the United States Constitution, art. I, § 8, cl. 8,[2] and the implementing Federal copyright statutes, 17 U.S.C. §§ 1–215. Plaintiffs seek preliminary and permanent injunctions restraining defendants from initiating or continuing any proceedings to enforce this purportedly unconstitutional section of the California Penal Code. Further, plaintiffs seek a declaratory judgment that Calif.P.C. § 653h (1968) is unconstitutional.

Federal jurisdiction is invoked pursuant to 28 U.S.C. § 1331, Federal Question; U.S.Const. Art. I, § 8, cl. 8, Copyright Clause; 17 U.S.C. §§ 1–215, Copyright Statutes; 28 U.S.C. § 1343, Civil Rights; and 28 U.S.C. §§ 2201 and 2202, Declaratory Judgment.

Plaintiffs requested a Three-Judge Court to hear and determine their right to interlocutory and permanent injunctions restraining the enforcement of the California statute on the ground of unconstitutionality. 28 U.S.C. §§ 2281 and 2284. After a hearing conducted on March 10, 1969, the single-judge District Court held that a Three-Judge Court must be convened because there was not a "clear and unequivocal showing that there [was] no substantial issue of constitutionality raised by the complaint, * * *" Accordingly, the Three-Judge Court was appointed and convened, and the case was tried on May 15, 1970. Except for the limited amount of testimony that was presented at the trial the case was heard on stipulated facts.

Defendant Evelle J. Younger is the duly elected and qualified District Attorney of the County of Los Angeles, and charged with the responsibility of enforcing Calif.P.C. § 653h (1968) within the unincorporated area of the County of Los Angeles and, by contract, in certain cities within the County of Los Angeles. Defendant Roger Arnebergh is the duly elected and qualified City Attorney of the City of Los Angeles, and charged with the responsibility of enforcing Section 653h within the City of Los Angeles.

The plaintiffs still remaining in this suit are Tape Industries Association of America, Barry Pressman, Donald Koven, Jean Holmquist, and Robert Holmquist. Upon stipulation of counsel, plaintiff Stanley Meckler dismissed his action against all defendants with prejudice on April 20, 1970.

Plaintiffs Pressman, Koven, Holmquist, and Holmquist are in the business of making and selling sound tapes and cartridges. These plaintiffs purchase on the open market long playing disc phonograph records which have been manufactured and sold through the usual commercial channels by record companies. Such disc phonograph records are

---

cause to be used for profit through public performance, such article on which such sounds are so transferred, without the consent of the owner.

(2) Sells any such article with the knowledge that the sounds thereon have been so transferred without the consent of the owner.

(b) As used in this section, 'person' means any individual, partnership, corporation or association; and 'owner' means the person who owns the master phonograph record, master disc, master tape, master film or other device used for reproducing recorded sounds on phonograph records, discs, tapes, films or other articles on which sound is recorded, and from which the transferred recorded sounds are directly or indirectly derived.

(c) This section shall neither enlarge nor diminish the right of parties in private litigation.

(d) This section does not apply to any person engaged in radio or television broadcasting who transfers, or causes to be transferred, any such sounds (other than from the sound track of a motion picture) intended for, or in connection with, broadcast transmission or related uses, or for archival purposes."

2. United States Constitution, Art. I, § 8, cl. 8:
"To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries;"

generally referred to as albums and they usually contain 10 to 12 performances of one artist or group of artists. A label containing the title or name of the album, the name of the recording artist or group of artists and the name of the record company, is affixed to each of the albums and the packages in which they are sold.

After purchasing an album, plaintiffs Pressman, Koven, Holmquist, and Holmquist make a tape recording of the exact sounds recorded on the album. The tape is made by playing the album on a record player connected to a tape recorder which turns out a tape. When this master tape is finished, it is placed on a machine known as a "tape playback deck". The "tape playback deck" is connected to machines known as "tape slaves" which in turn make additional tape recordings of the sounds which have been transferred from the record album to the master tape. A large number of "tape slaves" may be connected to one "tape playback deck" so that a correspondingly large number of tape recordings can be made at one time. After the tapes have been made by use of the "tape playback deck" and the "tape slaves", each of the new tapes is placed on a hub. Each hub is placed into a plastic cartridge, and the ends of the tape are spliced together so that it forms a continuous "loop" in the cartridge. The cartridge is sealed, tested, packaged, and labeled.

Plaintiffs affix to each tape cartridge recorded in the above manner a label which states the title of the original record album or albums from which the tape has been copied and the name of the recording artist or artists who made the album or albums. Each such tape cartridge also contains a label which states the following:

"No relationship of any kind exists between [plaintiffs] and the original recording company nor between this recording and the original recording artist. This tape is not produced under a license of any kind from the original company nor the recording artist(s) and neither the original recording company nor artist(s) receives a fee or royalty of any kind from [plaintiffs]. Permission to produce this tape has not been sought nor obtained from any party whatsoever."

Plaintiff Tape Industries Association of America is a California Corporation duly organized under the laws of the State of California for the purpose of helping to solve the problems of the various small tape manufacturers who produce tapes in the manner described above. Plaintiff Tape Industries distributes the disclaimer labels to its members for a fixed fee.

The record companies which manufacture and sell the albums which plaintiffs use to make their unauthorized tapes expend great efforts and substantial sums of money for the commercial exploitation of their albums. Some of the costs incurred by these record companies are: the various expenses in producing a master record of a performance which can be used to manufacture albums and authorized tapes; the expense of manufacturing records and tapes; the expense of advertising and promoting albums and tapes; and the expense of paying royalties to the recording artists and to the various trust funds established by collective bargaining agreements. Other than the small sums required to make and distribute their tapes, plaintiffs do not pay any other expenses. The issue of payment or nonpayment of royalties to the proprietors of copyrights of musical compositions involved was stipulated by the parties not to be relevant to this action.

There are presently at least 900 commercial record companies in operation in the United States. During 1968, the latest year for which figures are available, the sale of disc phonograph records by commercial companies in the United States had a list price value of at least $860 million. In addition to the market for albums, there is also a large demand in the United States for prerecorded tapes and tape cartridges. The record

companies which manufacture and sell albums also either manufacture the prerecorded tapes themselves, or license others to produce the tapes. These authorized tapes are sold in packages which bear labels containing the name of the record company that manufactures and sells the album, the name or title of the album, and the name of the recording artist or artists. The best estimates that are available show that in 1968, the sale of authorized tapes had a retail list value of at least $250 million.

Through a witness at the trial and by an affidavit of the Controller of Atlantic Recording Corporation, defendants produced, as examples, the costs of production and the sales figures for two of the albums which were in evidence in this case.

At the trial, Mr. Murray Gitlan, Controller of Warner Bros. Records, described the financial arrangements for an album entitled "The Association". Mr. Gitlan testified that the master recording for "The Association" cost $71,000, and that this figure included musicians' and arrangers' salaries, cost of studio, and other related studio charges. In addition, Mr. Gitlan testifed that $88,000 was paid to the performing artist and $12,000 was paid to the American Federation of Musicians' Pension and Trust Fund. Mr. Gitlan further testified that the first six months' sales figures for "The Association" totalled approximately $549,000.

Mr. Melvin Lewinter, Controller of Atlantic Recording Corporation, submitted an affidavit wherein he detailed the financial aspects of an album recorded by Crosby, Stills and Nash. Through March 31, 1970, the gross sales by Atlantic in the United States of the phonograph disc album was in excess of 1.1 million copies, and gross sales of this album by Atlantic in the United States in the form of prerecorded tapes was in excess of 100,000 copies. Through December 31, 1969, Atlantic's licensee, Ampex Corporation, had sales in excess of 70,000 copies of authorized prerecorded tapes. The cost of recording the album was approximately $80,000 and the costs of advertising and promoting this album were estimated at $20,000 to $30,000. Mr. Lewinter added that Atlantic's costs to date for manufacturing discs and prerecorded tapes of this album exceed $600,000, the payments to publishers and writers of the music contained in the album amount to over $250,000, and the gross earnings of the performing artists exceed $500,000.

Neither the District Attorney of the County of Los Angeles nor the office of the City Attorney of the City of Los Angeles have any Calif.P.C. § 653h (1968) prosecutions pending against any of the plaintiffs in this action. However, the parties have stipulated that if a complaint or request for complaint were to be made and if any such complaint or request for complaint should present the facts which are now known to the District Attorney and the City Attorney, including the facts developed in this lawsuit, defendants would issue a criminal complaint charging the individual plaintiffs with a violation of Section 653h if, in the defendants' discretion, they should believe that there is evidence to establish beyond a reasonable doubt each and every element of the offense defined by that Section. From the effective date of Section 653h in 1968 up to the present date, no complaint or request for complaint under it has been made to the office of either the District Attorney or the City attorney against any plaintiff in this action or against any other person.

Numerous issues of law have been raised in this action for declaratory and injunctive relief. Plaintiffs contend that Calif. P.C. § 653h (1968) provides "quasi copyright" protection that is unlimited in time for musical recordings which are in the public domain. Therefore, so it is alleged, Section 653h is contrary to Art. I, § 8, cl. 8 of the United States Constitution which grants to Congress the exclusive power to enact patent and copyright protection for "limited Times". Cognately, plaintiffs

contend that Calif.P.C. § 653h (1968) conflicts with the Federal copyright legislation enacted pursuant to the Constitutional authority invested in Congress. 17 U.S.C. §§ 1–215. Since Congress has not granted copyright protection to musical recordings, plaintiffs argue, the preemption doctrine enunciated in the United States Supreme Court decisions in Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), and Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964), precludes California and all other states from proscribing the mere duplication of unpatented and uncopyrighted material.

However, after hearing lengthy oral argument, after considering all the facts, and after reviewing the lengthy pleadings and points and authorities, this Three-Judge Court concludes that the primary issue is whether Calif. P.C. § 653h (1968) is unconstitutional under the Supremacy Clause, U.S.Const. art. VI, because it conflicts with the Copyright Clause, U.S.Const. art. I, § 8, cl. 8 and interferes with the Federal copyright policy devised pursuant to this Constitutional authority by Congress in the Copyright Statutes, 17 U.S.C. §§ 1–215.

And, before going to the merits, we must first determine our jurisdiction as a Three-Judge Court.

## WE HAVE NO JURISDICTION AS A STATUTORY THREE-JUDGE COURT

■ A statutory Three-Judge Court is required when there is a request for an interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute "upon the ground of the unconstitutionality of such statute". 28 U.S.C. § 2281. In Swift & Co. v. Wickham, 382 U.S. 111, 126–127, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965), the United States Supreme Court made it abundantly clear that cases arising solely under the Supremacy Clause of the Constitution, Art. VI, do not fall within the meaning of "unconstitutionality" as used in 28 U.S.C. § 2281:

"Since all federal actions to enjoin a state enactment rest ultimately on the Supremacy Clause, the words 'upon the ground of the unconstitutionality of such statute' would appear to be superfluous unless they are read to exclude some types of such injunctive suits. For a simple provision prohibiting the restraint of the enforcement of any state statute except by a three-judge court would manifestly have sufficed to embrace every such suit whatever its particular constitutional ground. It is thus quite permissible to read the phrase in question as one of limitation, signifying a congressional purpose to confine the three-judge court requirement to injunction suits depending directly upon a substantive provision of the Constitution, leaving cases of conflict with a federal statute (or treaty) to follow their normal course in a single-judge court."

Consequently, insofar as the matter here turns solely upon the Supremacy Clause, it is obvious that a statutory Three-Judge Court does not have jurisdiction.

A case arises solely under the Supremacy Clause when a State Statute is alleged to conflict with some Federal legislation or with a non-substantive provision of the United States Constitution. Examples of substantive provisions of the Constitution are the First Amendment, the Fourteenth Amendment and the Commerce Clause. *See,* Fitzgerald v. Catherwood, 388 F.2d 400 (2nd Cir. 1968), cert. denied, 391 U.S. 934, 88 S.Ct. 1846, 20 L.Ed.2d 854 (1968); Mengelkock v. Industrial Welfare Commission, 284 F.Supp. 950 (C.D.Cal.1968), appeal dismissed, 393 U.S. 83, 89 S.Ct. 60, 21 L.Ed.2d 215 (1968); United States v. Sullivan, 270 F.Supp. 236 (D. Conn.1967), aff'd, 398 F.2d 672 (2nd Cir. 1968), rev'd on other grounds, 395 U.S. 169, 89 S.Ct. 1648, 23 L.Ed.2d 182 (1969); Ness Produce Co. v. Short, 263 F.Supp. 586 (D.Or.1966), aff'd, 385 U.S.

537, 87 S.Ct. 742, 17 L.Ed.2d 591 (1967).

Plaintiffs contend that the Supreme Court in Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed. 2d 661 (1964), and in Compco Corporation v. Day-Brite Lighting, Inc., 376 U. S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964), implied that the Copyright Clause, U.S.Const. art. I, § 8, cl. 8, conferred a substantive right upon individuals to be free from a State's interference with the full enjoyment of materials not covered by Federal copyright or patent laws. However, even a cursory reading of *Sears* and *Compco* shows that the Supreme Court did not perceive any substantive right emanating from the "Copyright Clause". Instead, the Court in *Compco* and *Sears* was concerned primarily with the conflict between State and Federal laws. "Just as a State cannot encroach upon the federal patent laws directly, it cannot, under some other law, such as that forbidding unfair competition, give protection of a kind that clashes with the objectives of the federal patent laws." *Sears*, 376 U.S. at 231, 84 S.Ct. at 788. "To forbid copying would interfere with the federal policy, found in art. I, § 8, cl. 8, of the Constitution and in the implementing federal statutes, of allowing free access to copy whatever the federal patent and copyright laws leave in the public domain." *Compco*, 376 U.S. at 237, 84 S.Ct. at 781.

■ The Supreme Court in *Compco, Sears,* and other decisions has made it absolutely clear that the "Copyright Clause" merely empowers Congress to enact legislation and does not in any way confer a substantive right on any individual. *See,* American Tobacco Co. v. Werckmeister, 207 U.S. 284, 28 S.Ct. 72, 52 L.Ed. 208 (1907); Thompson v. Hubbard, 131 U.S. 123, 9 S.Ct. 710, 33 L.Ed. 76 (1889); Banks v. Manchester, 128 U.S. 244, 9 S.Ct. 36, 32 L.Ed. 425 (1888); and Application of Cooper, 254 F.2d 611, 45 C.C.P.A. 923 (1958). In *Banks,* 128 U.S. at 251–252, 9 S.Ct. at 39, the Supreme Court stated: "Although the Constitution of the United States in § 8 of article I, provides that the congress shall have power 'to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries,' yet the means for securing such right to authors are to be prescribed by congress. * * * No authority exists for obtaining a copyright, beyond the extent to which congress has authorized it.

■ It is true that if plaintiffs had sufficiently alleged and proved the grounds of "substantive unconstitutionality" that are required for jurisdiction in a statutory Three-Judge Court, we would also have had jurisdiction over any Supremacy Clause question as well as any non-constitutional issues involved. *See,* Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); United States v. Georgia Public Service Commission, 371 U.S. 285, 83 S.Ct. 397, 9 L.Ed.2d 317 (1963); Florida Lime & Avocado Growers v. Jacobsen, 362 U.S. 73, 80 S.Ct. 568, 4 L.Ed.2d 568 (1960); and Ness Produce Co. v. Short, 263 F. Supp. 586 (D.Or.1966).

■ However, under the *Swift* doctrine, it is clear that our statutory Three-Judge Court here does not have jurisdiction over this suit for injunctive and declaratory relief where the only Constitutional issue raised involves the Supremacy Clause.

## A NON–STATUTORY THREE–JUDGE COURT CAN DETERMINE THE MERITS OF THIS CASE.

While it seemed conclusive to this Court, from the extensive pleadings and the teaching of *Swift* that a statutory Three-Judge Court was not required, nevertheless, the inappropriateness of convening the statutory Three-Judge Court became even more apparent during the course of the trial and the oral arguments. The Fifth Circuit has recently addressed itself to the problem of convening a statutory Three-Judge Court when the propriety of such a

court is unclear. "In this day and time of dynamic expansion of constitutional principles and their application to new and sometimes unheard of situations it takes judicial prescience of a Delphic order to say with certainty that the attack is insubstantial. It is the better course —certainly from an administrative standpoint—to forego the doubts, constitute a 3-Judge Court, and allow that court to determine initially this and the other issues." Jackson v. Choate, 404 F.2d 910, 913 (5th Cir. 1968).

■ Assuming that a statutory Three-Judge Court is not required here, it could be dissolved by us and the case remanded for disposition to the single District Judge to whom the suit was originally assigned. Landry v. Daley, 288 F.Supp. 194 (N.D.Ill.1968), appeal dismissed, 393 U.S. 220, 89 S.Ct. 455, 21 L.Ed.2d 392 (1968); Mengelkoch v. Industrial Welfare Commission, 284 F. Supp. 950 (C.D.Cal.1968), appeal dismissed, 393 U.S. 83, 89 S.Ct. 60, 21 L. Ed.2d 215 (1968); and Krebs v. Ashbrook, 275 F.Supp. 111 (D.D.C.1967), aff'd, 132 U.S.App.D.C. 176, 407 F.2d 306 (1968), cert. denied, 393 U.S. 1026, 89 S.Ct. 619, 21 L.Ed.2d 570 (1969).

■ On the other hand, rather than remanding the case to the single District Judge, this Three-Judge Court can retain jurisdiction over the case and hear it as a *non-statutory* Three-Judge Court, the Circuit Judge herein having been so designated with the two District Judges. Even though a single judge does not have the power to decide a case that requires the convening of a court pursuant to 28 U.S.C. § 2281, three judges do have authority to sit as a *non-statutory* Three-Judge Court in a suit that could be disposed of by a single District Judge. 28 U.S.C. § 132; and Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800 (1941).

■ Thus, in order to avoid needless repetition and duplication, we take the more prudent path and do not remand this suit to the single District Judge, but instead follow the enlightened procedure outlined by the United States Supreme Court in Query v. United States, 316 U.S. 486, 62 S.Ct. 1122, 86 L.Ed. 1616 (1942), and explicitly approved in Swift & Co. v. Wickham, 382 U.S. 111, 114 n. 4, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965). In *Query*, a statutory Three-Judge Court heard the case, but "The opinion accompanying the decree stated, however, that the three judges were of the view that a district judge alone had exclusive jurisdiction to pass upon the case; and that the decree should therefore be considered 'not as the decree of a three-judge court, but as his decree, from which appeal lies to the Circuit Court of Appeals and not to the Supreme Court.' Nevertheless, all three judges signed the decree 'so that in the event it should hereafter be determined that the case was one for three judges under the statute, an appropriate decree will have been entered.'" 316 U.S. at 488, 62 S.Ct. at 1123. To avoid any possible confusion or necessity for another Three-Judge Court, we now proceed to determine the merits and direct that our decision on the merits be made and entered in our names as a non-statutory Three-Judge Court, and also in the name of the single District Judge. Wilson v. City of Port Lavaca, 391 U.S. 352, 88 S. Ct. 1502, 20 L.Ed.2d 636 (1968); Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965); Jackson v. Choate, 404 F.2d 910 (5th Cir. 1968); and Carlsbad Union School District of San Diego County v. Rafferty, 300 F. Supp. 434 (S.D.Cal.1969).

## PLAINTIFFS DO NOT STATE A CAUSE OF ACTION FOR INJUNCTIVE OR DECLARATORY RELIEF.

■ A threshold problem in this suit for injunctive and declaratory relief is whether plaintiffs have properly invoked Federal subject matter jurisdiction. Plaintiffs have alleged five grounds for Federal jurisdiction, and this Court has carefully considered all five. Neither the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, nor the Copyright Clause, U.S.Const. art. I, § 8, cl. 8, in

and of themselves create or confer subject matter jurisdiction on the Federal Courts. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). Plaintiffs have not alleged any copyright infringement, and hence they do not assert any jurisdiction under the Federal Copyright Legislation, 17 U.S.C. §§ 1–215.

Moreover, it is doubtful that plaintiffs have properly invoked Federal jurisdiction under the Civil Rights provision, 28 U.S.C. § 1343, or under the general Federal Question statute, 28 U.S.C. § 1331.

Title 28, United States Code § 1343 confers Federal jurisdiction over any civil rights action authorized by law to be commenced by any person. Plaintiffs have attempted to show that they are redressing their civil rights as protected by 42 U.S.C. § 1983. Several Federal Circuits have held that in order to qualify under Section 1983, the right sought to be redressed must not be a property right or any other right that is capable of pecuniary evaluation. Bradford Audio Corp. v. Pious, 392 F.2d 67 (2nd Cir. 1968); McManigal v. Simon, 382 F.2d 408 (7th Cir. 1967), cert. denied, 390 U.S. 980, 88 S.Ct. 1099, 19 L.Ed.2d 1276 (1968); and Howard v. Higgins, 379 F.2d 227 (10th Cir. 1967).

It is true that plaintiffs may eventually be deprived of their personal liberty if they are convicted of the misdemeanor proscribed in Calif.P.C. § 653h (1968). In the foregoing Circuits, however, this deprivation could not be remedied under Section 1983 because it is ultimately dependent upon an invasion of a property interest. Bradford Audio Corp. v. Pious, 392 F.2d 67 (2nd Cir. 1968). Whether in the Ninth Circuit a pecuniary and property right can be the basis for a civil rights action appears to be an open question. Willis v. Reddin, 418 F.2d 702 (9th Cir. 1969).

Turning to *Federal Question* jurisdiction, 28 U.S.C. § 1331 provides for Federal jurisdiction over all civil actions where the amount in controversy exceeds the sum or value of $10,000, and the case arises under the Constitution, laws or treaties of the United States. Plaintiffs have completely failed to offer any convincing evidence that the amount in controversy in this suit exceeds the sum or value of $10,000. They purport to have alleged a Federal Question insofar as they seek a declaration that they are immune from State prosecution under Calif.P.C. § 653h (1968) because of Federal preemption. But the Federal Question appears to be asserted merely as matter defensive to a potential State prosecution. Although the case law is not entirely clear, a Declaratory Judgment suit based on an anticipated Federal defense is probably not a proper basis for Federal jurisdiction. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); Louisville and Nashville Railroad Co. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908); and First Federal Savings and Loan Assoc. of Bowling Green, Kentucky v. McReynolds, 297 F.Supp. 1159 (W.D.Ky.1969).

Yet even if all the other prerequisites for civil rights and Federal Question jurisdiction are present, a major difficulty remaining for both sources of jurisdiction is whether there is actually present here a substantial claim founded on either the Constitution or laws of the United States. In order to determine this issue, it has been necessary for us to consider carefully the merits of the controversy. Rather than merely dismissing this suit on the grounds of lack of subject matter jurisdiction, we have concluded that we must also render judgment against the plaintiffs and in favor of the defendants on the merits.

In this suit for a declaration that Calif.P.C. § 653h (1968) is unconstitutional and for an injunction to restrain the enforcement of that Penal Code provision, plaintiffs have placed primary reliance on the landmark Supreme Court decisions in Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), and Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964).

*Sears* and *Compco* involve suits for damages and injunctive relief under an Illinois unfair competition law. Both the pole lamp in *Sears,* and the fluorescent lighting fixtures in *Compco* were unprotected by Federal patent law. In the two cases, the Supreme Court held that the Illinois unfair competition law could not constitutionally be applied to prevent a competitor from copying the designs and selling almost identical products simply because consumers might be confused about the source of the product. "Just as a State cannot encroach upon the Federal patent laws directly, it cannot under some other law, such as that forbidding unfair competition, give protection of a kind that clashes with the objectives of the Federal patent laws." 376 U.S. at 231, 84 S.Ct. at 788.

Defendants, on the other hand, cite and rely on International News Service v. Associated Press, 248 U.S. 215, 39 S. Ct. 68, 63 L.Ed. 211 (1918) (hereinafter called *I.N.S.*), where the Supreme Court affirmed an injunction restraining the appropriation of news. The parties to *I.N.S.* were competitors, and the appropriation was made by the defendant for the purpose of selling the news to defendant's clients. Defendant argued that once the news was communicated to the general public, by posting it upon bulletin boards or by issuing it in newspapers, plaintiffs no longer had a right to control its use. And any purchaser of a newspaper was said to have a right to communicate anything contained in it to anybody and for any purpose. But in rejecting these contentions, the Supreme Court replied:

> "The fault in the reasoning lies in applying as a test the right of the complainant as against the public, instead of considering the rights of complainant and defendant, competitors in business, as between themselves. The right of the purchaser of a single newspaper to spread knowledge of its contents gratuitously, for any legitimate purpose not unreasonably interfering with complainant's right to make merchandise of it, may

be admitted; but to transmit that news for commercial use, in competition with complainant—which is what defendant has done and seeks to justify—is a very different matter. In doing this defendant, by its very act, admits that it is taking material that has been acquired by complainant as the result of organization and the expenditure of labor, skill, and money, and which is salable by complainant for money, and that defendant in appropriating it and selling it as its own is endeavoring to reap where it has not sown, and by disposing of it to newspapers that are competitors of complainant's members is appropriating to itself the harvest of those who have sown. Stripped of all disguises, the process amounts to an unauthorized interference with the normal operation of complainant's legitimate business precisely at the point where the profit is to be reaped, in order to divert a material portion of the profit from those who have earned it to those who have not; with special advanatge to defendant in the competition because of the fact that it is not burdened with any part of the expense of gathering the news. The transaction speaks for itself, and a court of equity ought not to hesitate long in characterizing it as unfair competition in business." 248 U.S. at 239–240, 39 S.Ct. at 72.

Plaintiffs claim that both the First and the Ninth Circuits have refused to limit *Sears* and *Compco* so as to give continued vitality to the earlier Supreme Court decision in *I.N.S.* The First Circuit in Columbia Broadcasting System v. DeCosta, 377 F.2d 315 (1st Cir. 1967), cert. denied, 389 U.S. 1007, 88 S.Ct. 565, 19 L.Ed.2d 603 (1967), reversed a damage award for a plaintiff who alleged that C.B.S. Television misappropriated his character of "Paladin". The First Circuit held that "the judgment can only be supported on a rule of law that would allow recovery upon proof of creation by the plaintiff and copying by the defendants, and nothing else." 377 F.2d at 318. It necessarily added that *I.N.S.,*

the one Supreme Court case affording a remedy for mere copying was overruled in *Sears* and *Compco.*

The Ninth Circuit in Cable Vision, Inc. v. KUTV, Inc., 335 F.2d 348 (9th Cir. 1964), cert. denied, 379 U.S. 989, 85 S.Ct. 700, 13 L.Ed.2d 609 (1965), ruled that a community antenna television receiving system could not be enjoined and was not liable in damages for tortious contractual interference. The community antenna merely picked up programs broadcast by distant television stations and distributed them in competition with a local television station that had an exclusive contract right to broadcast the first run of the same television programs. The Court held *Sears* and *Compco* dispositive of the case: "As we read *Sears* and *Compco,* however, only actions for copyright infringement or such common-law actions as are consistent with the primary right of public access to all in the public domain will lie." 335 F.2d at 350. The Court continued: "No state intrusion of the federal field is permissible unless the law of the state meshes in purpose and effect with the announced objectives of federal copyright law. (Citation omitted). A limited ambit of operation is accorded state law but it may be exercised only insofar as consistent with the paramount federal interest." 335 F.2d at 350–351.

Plaintiffs here contend that the Ninth Circuit in *Cable Vision* rejected any distinction between copying and appropriating because the defendant was taking and selling the very same product being transmitted by the contractually authorized television station. They also rely on Smith v. Chanel, Inc., 402 F.2d 562 (9th Cir. 1968), to bolster their contention that the method of duplication, whether by copying or appropriating, does not have any bearing on the application of *Sears* and *Compco. Smith,* however, is not relevant to the present suit. The parties in *Smith* conceded that a competitor had a right to copy as closely as possible the unpatented formula of Chanel's perfume, and the crucial issue in that case was actually whether one who has copied an unpatented product sold under a trademark may use the trademark in his advertising to identify the product he has copied.

In *Sears, Compco, Smith,* and *De-Costa,* the defendants were not subject to state control because they merely copied the design or formula of the original producer. In *Cable Vision,* defendants were not enjoined because they simply rebroadcast a television transmission that was normally received without charge in individual homes. "Essentially, a CATV system no more than enhances the viewer's capacity to receive the broadcaster's signals; it provides a well-located antenna with an efficient connection to the viewer's television set. It is true that a CATV system plays an 'active' role in making reception possible in a given area, but so do ordinary television sets and antennas." Fortnightly Corp. v. United Artists, 392 U.S. 390, 399, 88 S.Ct. 2084, 2088, 20 L.Ed.2d 1176 (1968).

In contrast, plaintiffs in the instant case do not imitate the product of the record companies. They actually take and appropriate the product itself—the sounds recorded on the ablums—and commercially exploit the product. *Sears* and *Compco* would cover and immunize the plaintiffs here only if they had copied and imitated the product—that is, if they had listened to the sounds performed and embodied on the records and then had expended the necessary sums to copy and imitate the sounds on their own tapes. *See,* Davis v. Trans World Airlines, 297 F.Supp. 1145 (C.D.Cal. 1969).

And unlike the plaintiffs in *Cable Vision,* the plaintiffs here are not merely enhancing the listener's ability to receive something which he normally gets for free, but instead are selling for a reduced price another person's stolen and appropriated product for which the public customarily pays.

The Supreme Court in *Sears* and *Compco* appears to have enunciated a strict doctrine to avoid any possible con-

flict with Federal patent or copyright legislation and to enhance the Federal policy of free competition. *Sears*, 376 U.S. at 231, 84 S.Ct. 784; *Compco*, 376 U.S. at 237, 84 S.Ct. 779; and Goldstein, Federal System Ordering of the Copyright Interest, 69 Colum.L.Rev. 49, 64–65 (1969). At the same time, however, it is obvious that the Supreme Court tolerates some State regulation that is not inconsistent with the paramount Federal interest. *Cable Vision*, 335 F.2d at 351. For instance, the Supreme Court stated in *Compco*, 376 U.S. at 238, 84 S.Ct. at 782: "As we have said in *Sears*, while the federal patent laws prevent a State from prohibiting the copying and selling of unpatented articles, they do not stand in the way of state law, statutory or decisional, which requires those who make and sell copies to take precautions to identify their products as their own. A state of course has power to impose liability upon those who, knowing that the public is relying upon an original manufacturer's reputation for quality and integrity, deceive the public by palming off their copies as the original." In Water Services, Inc. v. Tesco Chemicals, Inc., 410 F.2d 163 (5th Cir. 1969), the Fifth Circuit held that the Supreme Court decisions in *Sears* and *Compco* do not displace the Georgia law relating to trade secrets. Likewise, in Grove Press, Inc. v. Collectors Publications, Inc., 264 F.Supp. 603 (C.D.Cal.1967), the District Court held that *Sears* and *Compco* do not preclude a preliminary injunction to prevent the appropriation of plaintiff's property by a defendant who photographed plaintiff's book by means of an offset lithography process and then intended to use the photographs to make and sell its own volumes in book form.

■ When all of the facts of the case here are considered, we are driven to the conclusion that Calif.P.C. § 653h (1968) is a tolerable and permissible state regulation directed against theft and appropriation of a saleable product, and does not unconstitutionally intrude on the Federal policies enunciated in the Copyright Clause, U.S.Const. art. I, § 8, cl. 8,

and in Federal Copyright legislation, 17 U.S.C. §§ 1–215. Plaintiffs in this action are known in the record industry as "tape pirates" and rightly so, for to the best of our knowledge all other courts that have had occasion to consider the conduct of such "tape pirates" have sanctioned state limitations upon their piratical activities. *See*, Capitol Records, Inc. v. Erickson, 2 Cal.App.3d 526, 82 Cal.Rptr. 798 (1969), cert. denied, 398 U.S. 960, 90 S.Ct. 2176, 26 L. Ed.2d 545, June 15, 1970.

Parenthetically we note that one Henry Brief, Executive Secretary of the Recording Industry Association of America estimates that "tape pirates" sold $100 million in unauthorized tapes last year. Rosenblat, Tape Pirates: Industry Fights Bootleg Music, L.A. Times, Feb. 28, 1970, at 1, col. 1. Undoubtedly, tape pirates are costing legitimate and authorized tape producers substantial amounts of money, and the State of California has properly and reasonably concluded that these parasitic tape pirates must be controlled. Regardless of whether Calif.P.C. § 653h (1968) is deemed a larceny statute or an unfair competition law, it is clear that the California Legislature is not precluded by the Copyright Clause of the Constitution or the Federal Copyright laws from prohibiting the activities of tape pirates. Nor should we intervene in the legitimate enforcement of the statutorily expressed desires of the California Legislature by the authorized prosecution officials who are the defendants.

The foregoing Decision shall constitute findings of fact of the undersigned three Judges sitting as a statutory Three-Judge Court, as a non-statutory Three-Judge Court, and as the single District Judge to whom the case was originally assigned. As a matter of law, the undersigned Judges sitting as a statutory Three-Judge Court conclude that such statutory Three-Judge Court has no subject matter jurisdiction over this cause. All of the conclusions of law hereinbefore set forth shall constitute

the conclusions of law of the undersigned three Judges sitting as a non-statutory Three-Judge Court and the conclusions of law of the single District Judge to whom the case was originally assigned.

In accordance with the foregoing, which shall also constitute findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52, we now order that the judgment be entered forthwith in favor of defendants and against plaintiffs.

> (s) OZELL M. TRASK
> Circuit Judge

> (s) FRANCIS C. WHELAN
> District Judge

> (s) A. ANDREW HAUK
> District Judge

Sitting and acting as a statutory Three-Judge District Court and also as a non-statutory Three-Judge District Court.

> (s) A. ANDREW HAUK
> District Judge

Sitting and acting as a Single-Judge District Court.