

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

April 3, 1972

Honorable W. T. McDonald, Jr.
County Attorney
Brazos County
Bryan, Texas    77801

Opinion No. M-1114

Re:  Whether Art. 1137r, Sec. 1-4,
     Vernon's Penal Code, prohibiting
     the reproduction for sale of
     sound recordings without the
     original owner's consent is
     unconstitutional as in conflict
     with the Copyright Clause, Art.
     I, Sec. 8, Cl. 8, United States
     Constitution, and the implement-
     ing federal statutes, 17 USC

Dear Mr. McDonald:       §§ 1-215, the Copyright Act.

         You have asked us for an opinion as to whether Art.
1137r, Sections 1-4, Vernon's Penal Code, prohibiting the re-
production of sound recordings without the original owner's
consent is unconstitutional as in conflict with the Copyright
Clause, Article I, Section 8, Clause 8, United States Consti-
tution, and the implementing federal statutes, 17 USC §§ 1-215,
the Copyright Act.  In this connection we have carefully exa-
mined the materials forwarded with the opinion request which
raise the issue of whether the preemption doctrine applied in
the companion landmark decisions  of the United States Supreme
Court in Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225
(1964) and Compco Corp. v. Day-Bright Lighting, Inc., 376 U.S.
234 (1946) precludes the States from enacting statutes pro-
scribing the duplication of uncopyrighted material.  Also as
you point out, we note that on October 15, 1971, effective
four (4) months after enactment, the 92nd Congress of the
United States, through a series of amendments to the Copyright
Act, provided a limited prospective protection to owners of
original sound recordings in Public Law 92-140 (S.646).1

         The magnitude of the problem involved which prompted
the federal legislation is described in House Report (Judiciary

---

11971 U.S. Code Cong. & Adm. News Pamph. No. 9, pp. 2469-2471.

Committee) No. 92-487, dated October 4, 1971, on Public Law 92-140, as follows:

"The attention of the Committee has been directed to the widespread unauthor- ized reproduction of phonograph records and tapes. While it is difficult to estab- lish the exact volume or dollar value of current piracy activity, it is estimated by reliable trade sources that the annual volume of such piracy is now in excess of $100 million. It has been estimated that legitimate prerecorded tape sales have an annual value of approximately $300 million. The pirating of records and tapes is not only depriving legitimate manufacturers of sub- stantial income, but of equal importance is denying performing artists and musicians of royalties and contributions to pension and welfare funds and Federal and State governments are losing tax revenues."[2]

The desire to attack this abuse no doubt moved the 62nd Legislature of the State of Texas to enact Art. 1137r, Sec- tions 1-4, Vernon's Penal Code, prohibiting the "piracy" of sound recordings.

Initially, it is to be presumed that a duly enacted statute of the State of Texas is valid against objection on constitutional grounds. 12 Tex. Jur. 2d, Const. Law, Sec. 42, pp. 385-386:

" . . . a statute will not be declared constitutional for the mere reason that it has been enacted by the legislature, it is presumed that the legislature has acted within its powers, and a duly en- acted statute is presumed to be consti- tutional. And if there could be a state of facts justifying the legislative ac- tion, it is presumed that such a state of facts exist."

Likewise, the Supreme Court of the United States has emphasized that ". . . this Court's decisions . . . enjoin(s)

------

21971 U.S. Code Cong. & Adm. News Pamph. No. 9, p. 2551.

seeking out conflicts between state and federal regulation where none clearly exists." Huron Portland Cement Co. v. City of Detroit, 362 U.S. 440, 446 (1960). A clear showing of conflict is required. As stated in Schwartz v. State of Texas, 344 U.S. 199, 203 (1952), the rule is that:

> "'It should never be held that Congress intends to supersede, or by its legislation suspend, the exercise of the police powers of the states, even when it may do so, unless its purpose to effect that result is clearly manifested.' Reid v. State of Colorado, 187 U.S. 137, 148, 23 S. Ct. 92, 96, 47 L.Ed 108."

In Florida Lime and Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142 (1963) the court held:

> "The test of whether both federal and state regulations may operate, or the state regulation must give way, is whether both regulations can be enforced without impairing the federal superintendence of the field, not whether they are aimed at similar or different objectives.
>
> "The principle to be derived from our decisions is that federal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained. See, e.g., Huron Portland Cement Co. v. Detroit, supra."
> (Emphasis supplied)

Further in Colorado Anti-Discrim. Comm. v. Continental Air Lines, 372 U.S. 714, 721 (1963), the Supreme Court, in ruling on the validity of a state statute under the Supremacy Doctrine, held:

> " . . . that the mere 'fact of identity does not mean the automatic invalidity of State measures'. California v. Zook, 336 U.S. 725, 730 (1949). To hold that a state statute identical in purpose with a federal statute is invalid under the Supremacy Clause, we must be able to conclude that the purpose

> of the federal statute would to some extent
> be frustrated by the state statute.  We can
> reach no such conclusion here."   (Emphasis
> supplied)

It is noteworthy that the Judiciary Committee Report on Public Law 92-140, referred to above, while mentioning the preemption argument concerning the " . . . jurisdiction of States to adopt legislation specifically aimed at the elimination of record and tape piracy . . . ", expressly refused to express an " . . . opinion concerning this legal question, . . . . "[3]  Hence, it can hardly be contended from the legislative history of Public Law 92-140 that Congress clearly intended to supersede existing state statutes on this subject matter.

Our research fails to reveal any case which makes the doctrine of the Sears and Compco cases applicable to the piracy of sound recordings.  To the contrary, we find that the courts of California, Illinois, New York and North Carolina have specifically rejected this application in upholding state statutes prohibiting the "piracy" of sound recordings.  See Capitol Records, Inc. v. Erickson, 2 Cal. App. 3d 526, 82 Cal. 798 (1969), 40 ALR 3d 553; Capitol Records, Inc. v. Greatest Records, Inc., 43 Misc. 2d 878, 252 N.Y.S. 2d 553 (Sup. Ct. 1964); Columbia Broadcasting System v. Documentaries Unlimited, Inc., 42 Misc. 2d 723, 248 N.Y.S. 2d 809 (Sup. Ct. 1964); Capitol Records, Inc. v. Spies, 264 N.E. 2d 874 (Ill. App. 1970); Liberty/VA Inc. v. Eastern Tape Corp., Superior Court of Mecklenburg County, No. 70-CVS-15018 (Jan. 6, 1971).

An excellent discussion of this question is contained in the three judge court's opinion in Tape Industries Association of America v. Younger, 316 F. Supp. 340 (C.D. Calf. 1970), appeal dism. 401 U.S. 902 (1971).  Therein plaintiffs sued to enjoin the enforcement of the California "tape piracy" statute, Penal Code, Sec. 653h (1968)[4]:

---

[3]1971 U.S. Code Cong. & Adm. News Pamph. No. 9, p. 2552.

[4]"§653h.  Transfer of recorded sounds for unlawful use; sale
   (a)  Every person is guilty of a misdemeanor who:
      (1)  Knowingly and willfully transfers or causes to be transferred any sound recorded on a phonograph record, disc, wire, tape, film or other article on which sounds are recorded, with intent to sell or cause to be sold, or to use or cause to be used for profit through public performance, such article on which such sounds are so transferred, without the consent of the owner.

> "Plaintiffs contend that the so-called
> 'tape piracy' law of California, Penal
> Code, Section 653h (1968) is in conflict
> with the Copyright Clause of the United
> States Constitution, Art. I, Sec. 8, Cl.
> 8, and the implementing Federal copyright
> statutes, 17 USC §§ 1-215."   (316 F. Supp.
> at 341-342).

The court distinguished Columbia Broadcasting System v. DeCosta, 377 F2d 315 (1st Cir 1967), Cable Vision, Inc. v. KUTV, Inc., 335 F2d 348 (9th Cir. 1964), Smith v. Chanel, Inc., 402 F2d 562 (9th Cir. 1968) and the Sears and Compco cases, supra, on the basis that:

> "In contrast, plaintiffs in the instant
> case do not imitate the product of the re-
> cord companies.  They actually take and
> appropriate the product itself--the sounds
> recorded on the albums--and commercially
> exploit the product."   (316 F. Supp at 350)

The Sears and Compco cases, supra, involved suits for damages and injunctive relief under the Illinois "unfair compe-tition" statute with respect to the copying of designs for light-ing fixtures which were either unpatentable or unpatented.  In this situation the Supreme Court held that the Illinois statute could not be applied constitutionally to prevent the copying of these designs even though the products were virtually identical. However, the Supreme Court expressly reserved to the States the right to prohibit practices such as here involved.  In the Compco case, the Supreme Court specifically restricted its ruling as follows:

> "As we have said in Sears, while the
> federal patent laws prevent a State from
> prohibiting the copying and selling of un-
> patented articles, they do not stand in the
> way of state law, statutory or decisional,
> which requires those who make and sell
> copies to take precautions to identify their
> products as their own.  A State of course
> has power to impose liability upon those who,
> knowing that the public is relying upon an

---

(2)  Sells any such article with the knowledge that the sounds thereon have been so transferred without the consent of the owner."

original manufacturer's reputation for quality
and integrity, deceive the public by palming
off their copies as the original."

An appropriate area for State legislation was found
to exist by the three judge court in the Tape Industries case,
supra, which was not precluded by the Sears and Compco decisions.
At page 351 of the opinion the Court held:

"Undoubtedly, tape pirates are costing
legitimate and authorized tape producers
substantial amounts of money, and the State
of California has properly and reasonably
concluded that these parasitic tape pirates
must be controlled.  Regardless of whether
Calif. P.C. §653h (1968) is deemed a lar-
ceny statute or an unfair competition law,
it is clear that the California Legislature
is not precluded by the Federal Copyright
laws from prohibiting the activities of
tape pirates.  Nor should we intervene in
the legitimate enforcement of the statu-
torily expressed desires of the California
Legislature by the authorized prosecution
officials who are the defendants."  (Em-
phasis supplied.)

Recently, on February 29, 1972, in Civil Action No.
3-5536-A, styled Independent Tape Merchant's Association v.
Crawford Martin, et al., filed in the United States District
Court for the Northern District of Texas, a suit similar to the
Tape Industries case, to enjoin the enforcement of Art. 1137r,
Vernon's Penal Code, was dismissed by the court on the finding
that:

" . . . this Court should not interfere
with the state criminal court's enforce-
ment of state law under the circumstances
as set forth by plaintiff in this action,
. . . . "

Finally, it should be observed that while the situa-
tion under the Patent Act, 35 USC §§ 1-293, is one of either
protection or no protection, a different situation is presented
by the Copyright Act, 17 USC §§ 1-215, even as amended, in that
under §2 of the Act provision is made for protection of so-
called "common law" copyrights.[5]  The weight of authority is

_____

[5]"Nothing in this title shall be construed to annul or limit
  the right of the author or proprietor of an unpublished work,

that the giving of a performance and the sale of a recording does not constitute publication, Columbia Broadcasting Systems, Inc. v. Documentaries Unlimited, Inc., supra (news reports), Metropolitan Opera Association, Inc. v. Wagner Nichols Recorder Corp., 199 Misc. 786, 101 N.Y.S. 2d 483 (Sup. Ct. 1950), aff'd., 279 App. Div. 732, 107 N.Y.S. 2d 795 (1951) (opera broadcasts); from other "masters", Capitol Records, Inc. v. Mercury Records Corp., 109 F. Supp. 330 (S.D.N.Y. 1952); RCA v. Premier Albums, Inc., 19 App. Div. 2d 62, 240 N.Y.S. 2d 995 (1963); from phonograph records sold to the public, Capitol Records, Inc. v. Greatest Records, Inc., supra; Capitol Records, Inc. v. Erickson, supra; Capitol Records, Inc. v. Spies, supra; Liberty/VA Inc. v. Eastern Tape Corp., supra; Geiseking v. Urania Records, Inc., 17 Misc. 2d 1034, 155 N.Y.S. 2d 171 (Sup. Ct. 1956).

The opposite view is taken in Granz v. Harris, 98 F. Supp. 906 (S.D.N.Y. 1951); McIntyre v. Double A. Music Co., 166 F. Supp. 681 (C.D. Cal. 1958); Mills Music v. Cromwell Music Co., 126 F. Supp. 54 (S.D.N.Y. 1954); Shapiro, Bernstein & Co. v. Miracle Record Co., 91 F. Supp. 473 (N.D. Ill. 1950). It is respectfully submitted that these cases are cited because they erroneously fail to recognize the distinction between "copying" and "appropriating". Here we are not concerned with a situation where the recordings are being imitated but rather the actual sounds, the performance itself, is being appropriated. Each of the cases cited above rely on RCA Manufacturing Co. v. Whitman, 114 F2d 86 (2nd Cir. 1940) for their result. However, this case was expressly overruled in Capitol Records, Inc. v. Mercury Records Corp., 221 F2d 657 (2nd Cir. 1955). Therein at page 663 the Court held:

> "Our conclusion is that the quoted statement from the RCA case is not the law of the State of New York.

> "Since its decision the New York courts have had close contact with the question in Metropolitan Opera Assn. v. Wagner Nichols Recorder Corp., 199 Misc. 786, 101 N.Y.S. 2d 483, Id., 279 App. Div. 632, 107 N.Y.S. 2d 795. We believe that the inescapable result of that case is that, where the originator, or the assignee of the originator, of records of performances by musical artists

---

at the common law or in equity, to prevent the copying, publication, or use of such unpublished work without his consent, and to obtain damages therefor."

> puts those records on public sale, his act
> does not constitute a dedication of the
> right to copy and sell the records."

A very excellent annotation is contained in 40 ALR 3d 553, following Capitol Records, Inc. v. Erickson, supra, which may be referred to for a rather more extensive treatment of this whole subject. Noteworthy is the citation in the court's opinion in the Erickson case, 40 ALR 3d at 561, to Pottstown Daily News Publishing Co. v. Pottstown Broadcasting Co., 411 Pa. 383, 192 A2d 657, 662 (1963) which holds that while unfair competition law originally related to "palming off" of one's goods as those of another, "In recent years its scope has been extended. It has been held to apply to misappropriation as well as misrepresentation", quoting from A.L.A. Schechter Poultry Corp. v. United States, 295 U.S. 495, 531-532 (1935).

The courts of the State of Texas have apparently long recognized the distinction between copying and appropriation. In Gilmore v. Sammons, 269 SW 861 (Tex. Civ. App. 1925, writ dism.), it was held that appropriation of news items by a competitor constituted unfair competition under the doctrine of International News Service v. Associated Press, 248 U.S. 215 (1918). On the other hand the simulation of a sporting event broadcast by a non-competitor to the original broadcaster was found not to constitute unfair competition, and the Gilmore case, supra, was distinguished. See Loeb v. Turner, 257 SW2d 800 (Tex. Civ. App. 1953, no writ).

In conclusion, our opinion is that by the enactment of Article 1137r, the 62nd Legislature has done no more than the California Legislature did in its passage of § 653h, P.C. and such constitutes the adoption of either an unfair competition law or a theft statute which has been held in the Tape Industries case, supra, to constitute a valid exercise of the State's legislative powers and not to constitute any undue interference or conflict with the federal copyright policy devised pursuant to the Constitutional authority of Congress in the Copyright Act, 17 USC §§ 1-215.

### S U M M A R Y

> It is our opinion that Article 1137r,
> Vernon's Penal Code, is valid and is not
> in conflict with Art. I, Sec. 8, Cl. 8,
> United States Constitution, or the Copy-
> right Clause, and the implementing federal
> statutes, 17 USC §§ 1-215, the Copyright
> Act.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

PREPARED BY:

Van Thompson, Jr.
Assistant Attorney General


APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
Bill Allen, Co-Chairman

Scott Garrison
Roland Allen
Houghton Brownlee
Ralph Rash
Wayne Rodgers

SAMUEL D. MCDANIEL
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant